Afsaneh Ashley **TABADDOR**

v.

Eric H. **HOLDER** Jr., et al.

**CV 14–6309–GW(CWx)**

United States District Court,
C.D. California.

Filed April 23, 2015

Allison M. Rego, Ali M.M. Mojdehi, Janet Dean Gerts, for Plaintiffs.

Benjamin L. Barwick, U.S. DOJ, for Defendants.

## PROCEEDINGS: DEFENDANTS' MOTION TO DISMISS [33]

### GEORGE H. WU, UNITED STATES DISTRICT JUDGE

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Defendants' motion is GRANTED IN PART and DENIED IN PART.

A Scheduling Conference is set for May 14, 2015 at 8:30 a.m. Parties may appear telephonically provided that notice is given to the clerk two business days prior to the hearing.

**Tabaddor v. Holder, Jr., et al.,** Case No. 2:14–cv–6309–GW–CW

Tentative Ruling on Motion to Dismiss

### I. *Background*

In an Amended Complaint ("AC") filed October 3, 2014, in this action, Afsaneh Ashley Tabaddor ("Plaintiff") sues Eric Holder, Jr. ("Holder"); Jeffrey A. Rosenblum ("Rosenblum"); Thomas Y.K. Fong ("ACIJ Fong"); Marlene M. Wahowiak; the United States Department of Justice ("DOJ"); the Executive Office for Immigration Review, United States Department of Justice ("EOIR"); the Office of the General Counsel, Executive Office for Immigration Review; and the Office of the Chief Immigration Judge, Executive Office for Immigration Review (collectively "Defendants"). Plaintiff asserts four claims for relief: 1) Violation of the First Amendment; 2) Unconstitutional Overbreadth of Agency's Policy of Enforcing Regulation; 3) Unlawful Discrimination in Violation of Title VII; and 4) Unlawful Retaliation in Violation of Title VII.

Plaintiff is a sitting Immigration Judge with the DOJ, EOIR, and an Iranian–American. *See* AC ¶¶ 1, 19. She alleges that in 2012, "EOIR ordered that she be recused from any and all cases before her involving Iranian nationals and that she should not be assigned any such cases in the future—an order that remains in effect today." *Id.* This order—which originated in the form of a "recommendation" but transformed into an order following her protest of it—resulted from her decision to attend, upon invitation (and after seeking—and receiving—approval for annual leave to do so), an event held by the White House Office of Public Engagement entitled a "Roundtable with Iranian–American Community Leaders" ("the Roundtable"). *See id.* ¶¶ 3, 31–42, 70. As a result of her objection to the initial recommendation and continuing order, Plaintiff also alleges that she has suffered further actions at the hands of Defendants—an inability to use her title, with an appropriate disclaimer, in connection with outside speaking activities in her personal capacity, and a refusal to allow her to receive compensation for teaching courses at UCLA law school. *See id.* ¶¶ 71, 73, 97–98.

## II. *Analysis*

Defendants move to dismiss each of Plaintiff's claims. In roughly-drawn terms, they argue that this Court cannot consider Plaintiff's constitutional claims because those claims are precluded by the Civil Service Reform Act ("CSRA"). As to Plaintiff's Title VII discrimination claim, Defendants assert that Plaintiff failed to administratively exhaust it in a timely manner and that Plaintiff has failed to plead an adverse employment action. Finally, with respect to retaliation, Defendants argue that Plaintiff failed to administratively exhaust one of the bases for the claim and has not alleged facts demonstrating a *prima facie* case.

## A. **Applicable Procedural Standards**

Under Rule 12(b)(6), concerning whether a complaint has properly stated a claim, a court is to (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998); *see also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir.2009). The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir.2003). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678; 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008); *see also Twombly*, 550 U.S. at 562–63, 127 S.Ct. 1955 (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief). However, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual con-

tent that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

In its consideration of a Rule 12(b)(6) motion, the court is limited to the allegations on the face of the complaint (including any documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles,* 250 F.3d 668, 688–89 (9th Cir.2001); *Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds in Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir.2002); *see also Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir.2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

Unlike a typical Rule 12(b)(6) motion, under Rule 12(b)(1), which permits motions to dismiss for lack of subject matter jurisdiction, a court may look beyond the complaint and consider extrinsic evidence. *See Lacano Invs., LLC v. Balash,* 765 F.3d 1068, 1071 (9th Cir.2014).

Failure to administratively exhaust should be raised by summary judgment motion except where that failure is clear on the face of the complaint. *See Williams v. Paramo,* 775 F.3d 1182, 1191 (9th Cir.2015); *Albino v. Baca,* 747 F.3d 1162, 1168 (9th Cir.2014) *(en banc), cert. denied sub nom., Scott v. Albino,* —— U.S. ——, 135 S.Ct. 403, 190 L.Ed.2d 307 (2014). This is a change from the Ninth Circuit's prior approach to this issue, which was to address it by way of an "unenumerated Rule 12(b) motion." *Albi-*

*no,* 747 F.3d at 1168–69; *see also Wyatt v. Terhune,* 315 F.3d 1108 (9th Cir.2003).

## B. Constitutional Claims—Claims One and Two

In 2012, in *Elgin v. Department of Treasury,* —— U.S. ——, 132 S.Ct. 2126, 183 L.Ed.2d 1 (2012), the Supreme Court decided "whether the CSRA precludes district court jurisdiction over petitioners' claims even though they are constitutional claims for equitable relief," concluding that, in fact, it does. *Id.* at 2132; *see also Richards v. Kiernan,* 461 F.3d 880, 885 (7th Cir.2006) ("There is no question but that the CSRA provides the exclusive remedy for an alleged constitutional violation (including an alleged First Amendment violation) arising out of federal employment."). This was due, in large part, to the comprehensive and "painstaking" detail the CSRA goes into when setting out the method for covered employees to obtain review of adverse employment actions. *See Elgin,* 132 S.Ct. at 2133–34. The Court concluded that there was no room even for an exception for "facial or as-applied constitutional challenges to federal statutes." *Id.* at 2134; *see also id.* at 2135–36 (rejecting a distinction between facial and as-applied challenges in favor of "a jurisdictional rule based on the type of employee and adverse agency action at issue[, which] does not involve such amorphous distinctions"). In reaching the decision, the Court noted—citing the carve-out for discriminatory actions in 5 U.S.C. § 7702(a)(1)(B)—"that Congress knew how to provide alternative forums for judicial review based on the nature of an employee's claim," and did not do so for constitutional claims. *See id.* at 2134–35; *Nyunt v. Chairman, Broad. Bd. of Governors,* 589 F.3d 445, 448 (D.C.Cir.2009) ("When Congress wants to preserve remedies outside the CSRA, it does so expressly; for example, the CSRA maintains federal employ-

ees' rights to bring suit under Title VII and other anti-discrimination laws.").

*Elgin* also rejected an argument that the CSRA did not preclude review over the petitioners' claims in that case because the claims were "wholly collateral" to the CSRA scheme and, according to the petitioners, had "nothing to do with the types of day-to-day personnel actions adjudicated by the MSPB." *See Elgin,* 132 S.Ct. at 2139. The Court summarily disagreed with the petitioners, concluding that the case before it was "a challenge to [a] CSRA-covered employment action brought by CSRA-covered employees requesting relief that the CSRA routinely affords." *Id.* at 2140.

Here, unlike in *Elgin,* Defendants argue that the recusal recommendation/order would, under Plaintiff's allegations, constitute a "prohibited personnel practice," which they assert must be challenged—at least insofar as Plaintiff's constitutional claims are concerned[1]—via the Office of Special Counsel unless Plaintiff had a right to appeal directly to the MSPB. *See* 5 U.S.C. § 1214(3); *Mangano v. United States,* 529 F.3d 1243, 1247 (9th Cir.2008) ("The CSRA preempts Dr. Mangano's FTCA claims in this case if the conduct underlying his complaint can be challenged as 'prohibited personnel practices' within the meaning of the CSRA."). "Prohibited personnel practice[s]" include race-, religion- and/or national origin-based discriminatory actions, taken by "[a]ny employee who has authority to take, direct others to take, recommend, or approve any personnel action." 5 U.S.C. § 2302(a), (b)(1)(A); *see also United States v. Fausto,* 484 U.S. 439, 446, 108 S.Ct. 668, 98 L.Ed.2d 830

(1988); *Mangano,* 529 F.3d at 1247 ("The CSRA defines 'prohibited personnel practices' as any 'personnel action' taken by someone in authority that violates one of twelve enumerated practices."). "Personnel action" includes any "significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(xii).

As Defendants note in their Reply, Plaintiff's Opposition brief initially focuses on the *merits* of her claims (offering both substantive and procedural reasons for why Defendants' actions were in error), a subject not really *at issue* in Defendants' present challenge. When properly focused on the grounds the Defendants actually raise, Plaintiff argues that her constitutional claims: 1) fall outside of the CSRA, 2) have already satisfied the CSRA requirements, because they include discrimination allegations, and/or 3) may be heard by this Court because of 5 U.S.C. app § 404, granting judicial review, to any party aggrieved, of any statute or regulation arising under the federal conflict of interest laws.

■ Plaintiff asserts that the conduct here does not constitute a "prohibited personnel practice" under the CSRA because none of the officials responsible for the order in question actually had "authority" to make such an order, a requirement under 5 US.C. § 2302(b), as quoted above. *See generally Gilding v. Carr,* 608 F.Supp.2d 1147, 1151–52 (D.Ariz.2009). In support of this argument, she asserts that Chief Immigration Judges have the power to regulate assignment of cases, but only for workload balancing, based on non-substantive criteria, leaving to individual Im-

---

1. The CSRA allows Title VII claims to be filed in federal district court. *See* 5 U.S.C. § 2302(d)(1) ("This section shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity through affirmative action or any right or remedy available to any employee or applicant for employment in the civil service under ... section 717 of the Civil Rights Act of 1964 (42 U.S.C.2000e–16), prohibiting discrimination on the basis of race, color, religion, sex, or national origin.").

migration Judges the actual application of recusal principles in individual cases.

For several reasons, the Court has difficulty agreeing with Plaintiff on this point. First, as a practical matter, whether or not Rosenblum and/or ACIJ Fong had *de jure* authority to cause Plaintiff's recusal, they clearly had *de facto* authority. in that regard—Plaintiff's case centers on her contention that she is operating under an ongoing blanket recusal order. Second, as Defendants note, section 2302(b)(1)(A) includes the "authority to ... recommend" personnel action. In other words, even if there was no authority to "order" Plaintiff to recuse herself, she has not explained why there was insufficient authority to "recommend" such action—a recommendation Plaintiff obviously took seriously enough here to follow up on after her attendance at the Roundtable. These considerations alone are sufficient to reject Plaintiff's argument on this issue. [2]

Defendants argue, and the Court would agree, that there is no doubt that Plaintiffs constitutional claims are employment-re-

lated, and therefore within the scope of the CSRA. The Ninth Circuit has noted that the definition of "personnel action" is "necessarily[ ] broad." *Mangano*, 529 F.3d at 1247; *see also Mahoney v. Donovan*, 721 F.3d 633, 636 (D.C.Cir.2013). Plaintiff's claims center on her forced recusal from presiding over matters relating to Iranian nationals that she would otherwise oversee in her position as an Immigration Judge, resulting from her original request to take leave from her work in order to attend an outside event. *See* AC ¶¶ 75, 78, 84; *see also Mahoney*, 721 F.3d at 636 (rejecting administrative law judge's contention that his claims were "far afield from the types of claims that are cognizable under the" CSRA where he challenged, among other things, "the selective assignment of cases on the basis of political considerations or the Secretary[ of the Department of Housing and Urban Development's] perceived interests," because such an action affects "working conditions" and therefore falls within the scope of "personnel action" under the CSRA);[3] *Broughton v. Courtney*,

---

**2.** Defendants also argue that: 1) supervisors may, in fact, order Immigration Judges such as Plaintiff to be recused from matters that would raise questions of impartiality due to the employee's participation in outside activities, citing 5 C.F.R. §§ 2635.502(a) and 2635.106, and 5 U.S.C. § 7106; 2) Plaintiff's claims are subject to the CSRA because they arise from her federal employment, whether or not they consisted of a "prohibited personnel practice," citing *Sculimbrene v. Reno*, 158 F.Supp.2d 1, 6 (D.D.C.2001) ("[A]ccording to applicable and binding precedent, whether or not the complained of harm falls within the definition of 'personnel action' in Section 2302 is· not relevant to a determination of whether · the CSRA governs Plaintiff's claims."), in order to avoid the possibility that employees could circumvent the CSRA simply by alleging that the personnel action was not within the supervisor's authority; 3) the very question of whether a "prohibited personnel practice" occurred was itself to be decided by way of the CSRA scheme; and 4) there is no requirement that the person taking the per-

sonnel action do so pursuant to a specific delegation of authority on the subject. In light of the above, the Court seemingly has no need to consider these arguments.

**3.** Plaintiff criticizes any reliance on *Mahoney* because that case did not involve any constitutional claims or claims relating to conduct outside the workplace, did not implicate 5 U.S.C. app. § 404, did not involve a charge of discrimination, and has been called into question recently by *Association of Administrative Law Judges v. Colvin*, 777 F.3d 402 (7th Cir. 2015). With the exception of the citation to *Colvin*, each of these proposed reasons for rejecting *Mahoney* is discussed further herein (though not specifically in reference to *Mahoney*). To the extent *Colvin* criticized *Mahoney* it was based upon *Mahoney's* position (as interpreted by the Seventh Circuit in *Colvin*) 'that *any* action alleged to interfere with an administrative law judge's decisional independence is a personnel action.' Here, the recusal order in question does not begin to test the outer limits of *Mahoney* in that regard.

861 F.2d 639, 643 (11th Cir.1988) (concluding that "assigning work" was a personnel action within the meaning of the CSRA).

But Plaintiff also alleges that the conduct in question has a chilling effect on activity outside of the workplace, *see* AC ¶ 11, 46, 69, 75, and therefore can stand apart from the recusal order, if necessary. *See Carter v. Kurzejeski*, 706 F.2d 835, 843 n.9 (8th Cir.1983) (refusing to decide "whether the discharge of a federal employee for constitutionally protected conduct unrelated to the workplace must be raised under" the CSRA, and stating, in *dicta*, that a "district court might well have independent jurisdiction to review a claim by a federal employee discharged solely because that employee made a public speech expressing politically unpopular views while away from the workplace"); *Ramirez v. U.S. Customs & Border Prot.*, 709 F.Supp.2d 74, 80 (D.D.C.2010) (concluding—in case where plaintiff actually filed a complaint with the Office of Special Counsel—that no personnel action occurred where defendant merely denied authorization for plaintiff to serve on city council); *Keeffe v. Library of Congress*, 588 F.Supp. 778 (D.D.C.1984). For the proposition that she could bring claims where they challenge restrictions on freedom of expression or association separate from actions taken against them in the workplace, Plaintiff relies on *Firenze v. NRLB*, No. 12–10880–PBS, 2013 WL 639151, *8, 2013 U.S. Dist. LEXIS 23253, *21–22 (D.Mass. Jan. 10, 2013) (a Magistrate Judge "Recommendation," later adopted by the District Court), and *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1434 (D.C.Cir.1996).

The Eighth Circuit's *dicta* in *Carter* cannot survive post-*Elgin*, which emphasized looking at the type of employee and the nature of the employment action, not the nature of the employee's conduct leading to the employment action. The same is true of *Keeffe*, which relied on: 1) the existence of constitutional claims in the case for its determination that the case could proceed in district court, and 2) the Eighth Circuit's *Carter dicta* which, as noted, is no longer persuasive (to the extent it ever was). *See Keeffe*, 588 F.Supp. at 785–87. *Ramirez* cannot aid Plaintiff because there simply was no personnel action in that case. Finally, whether or not Plaintiff could bring claims separate from actions taken in the workplace against her, she has not done so here. As Defendants argue, Plaintiff's claims in this action are infused and intertwined with the recusal order issued to her, and they are based *entirely* on actions taken with respect to her, not on some guidance or other expression of the challenged recusal-regulation interpretation. *See also Lehman v. Morrissey*, 779 F.2d 526, 527 (9th Cir.1985) ("[I]n enacting the CSRA Congress meant to limit remedies of federal employees bringing claims closely intertwined with their conditions of employment to those remedies provided in the statute."). This contrasts with *Weaver*, which involved (to the extent relevant here) a plaintiffs pursuit of relief *before* she had received an oral admonishment—a "pre-enforcement attack on a regulation restricting employee speech." *Weaver*, 87 F.3d at 1434; [4] *see also Hardy v. Hamburg*, 69 F.Supp.3d 1, 16–18 (D.D.C.2014).

Defendants also contend that it does not matter, for CSRA preclusion purposes, that Plaintiff's First Amendment claims are framed as broad challenges to agency actions affecting all Immigration Judges. They appear to have the better argument

---

4. The claim at issue in *Firenze*, Plaintiff's other cited decision on this point, did not involve a prohibited personnel action, but only the promulgation and maintenance of a rule prohibiting employees from publicizing their grievances while at work.

on this point as well. *See Nyunt,* 589 F.3d 448–49 (concluding that a federal employee may not circumvent CSRA requirements and limitations by resorting to the "catchall APA" and that "[t]hat principle applies to a 'systemwide challenge' to an agency policy interpreting a statute just as it does to the implementation of such a policy in a particular case"); *Fornaro v. James,* 416 F.3d 63, 67–69 (D.C.Cir.2005) (rejecting argument "that the CSRA regime's exclusivity for individual benefits determinations does not preclude what [plaintiffs] contend is a collateral, systemwide challenge").

 Returning to the Supreme Court's decision in *Elgin,* Plaintiff attempts to distinguish that case because the petitioners there were entitled as of right to an appeal to the Federal Circuit under the CSRA, which is—according to Plaintiff, and apparently not contested by Defendants—*not* the case here where a "prohibited personnel practice" is at issue. In addition, unlike *Elgin,* the Ethics in Government Act ("EGA"), 5 U.S.C. app. § 404—"In promulgating rules and regulations pertaining to financial disclosure, conflict of interest, and ethics in the executive branch, the Director shall issue rules and regulations in accordance with chapter 5 of title 5, United States Code. Any person may seek judicial review of any such rule or regulation."—specifically allows for judicial review of regulations relating to ethics· and conflicts of interest, such as 5 C.F.R. § 2635.502. Thus, unlike in *Elgin,* Plaintiff argues that it is not fairly discernible that Congress intended to preclude Plaintiff's constitutional claims by virtue of the CSRA.

The EGA issue is likely the more straightforward to deal with of these two arguments. Defendants correctly note[5] that Plaintiff has not cited any case law in support of the proposition that the EGA operates as an exception to the CSRA, and asserts that her argument relying on that provision is flawed in any event. Plaintiff is not actually challenging any rule or regulation, but instead a policy of *interpreting and applying them* in a particular fashion. Defendants also argue that section 404 is a *standing* provision, whereas Plaintiff's problem is not one of standing, but of *failure to exhaust.* Finally, Defendants note that the EGA became law only 13 days after the CSRA, offering that it is not plausible that Congress would intend the very general language of section 404 to disrupt the remedial scheme it had just set up in the CSRA. *See Hinck v. United States,* 550 U.S. 501, 506, 127 S.Ct. 2011, 167 L.Ed.2d 888 (2007) (allowing analysis to be "governed by the well-established principle that, in most contexts, 'a precisely drawn, detailed statute preempts more general remedies'") (omitting internal quotation marks) (quoting *EC Term of Years Trust v. United States,* 550 U.S. 429, 433, 127 S.Ct. 1763, 167 L.Ed.2d 729 (2007)); *see also Lacson v. U.S. Dep't of Homeland Sec.,* 726 F.3d 170, 175–76 (D.C.Cir.2013). Rather, in those circumstances, any exception would have been explicit. In the absence of case law involving section 404 (let alone case law involving the intersection between section 404 and the CSRA), the Court finds these arguments persuasive. Section 404 does not provide Plaintiff a basis to escape the provisions of the CSRA.

---

5. Plaintiff argues that Defendants are precluded from addressing the EGA because reference to it was included in the AC, *see* AC ¶ 18, but Defendants did not take it into consideration in their opening brief on this motion. At the time Defendants filed their motion, however, they had no reason to believe that Plaintiff would emphasize it as a factor distinguishing this case from *Elgin.* Nor, for reasons addressed further above, does it have clear application to the nature of Plaintiff s challenge in this case.

As to the question of whether *Elgin* is distinguishable because in that case (unlike here) a right of access to the courts was still available to the plaintiff bringing constitutional claims, Defendants argue that the CSRA avenue of relief is not just for those disputes that are subject to review by the Merit Systems Protection Board and, ultimately, the Federal Circuit. *See Towers v. Horner*, 791 F.2d 1244, 1246 (5th Cir.1986); *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1014 (D.C.Cir. 2009) (Congress's exemption of these controllers' agency from the CSRA signals the same thing as Congress's omission of the type of personnel action at issue in *Graham [v. Ashcroft*, 358 F.3d 931 (D.C.Cir. 2004) ] or the type of employees at issue in *Fausto*–namely that Congress intended to provide these employees with no judicial review. This is because we treat the CSRA and Congress's related employment statutes as covering the field of federal employee claims, and so our cases expressly teach that those left out of this scheme are left out on purpose."); *Graham*, 358 F.3d at 934–35. Congress, they argue, clearly intended for review to be as set forth in the CSRA or not at all. *See Saul v. United States*, 928 F.2d 829, 840 (9th Cir.1991). They posit that this is true even where review is precluded entirely, *see Mangano*, 529 F.3d at 1246 ("In fact, a federal employee's personnel-related complaints are preempted 'even if no remedy [is] available ... under the CSRA.'") (quoting *Collins v. Bender*, 195 F.3d 1076, 1079 (9th Cir.1999)), but assert that the Court need not concern itself with the question of whether it would have jurisdiction over Plaintiff's constitutional claims even if she had no other possible recourse (as in *American Federation of Government Employees Local 1 v. Stone*, 502 F.3d 1027, 1037 (9th Cir.2007) and *Coleman v. Napolitano*, 65 F.Supp.3d 99, 102–03 & n. 3 (D.D.C.2014)), because she actually *had* potential avenues for review of those claims under the CSRA. She, like the plaintiff in *Saul, see* 928 F.2d at 838–39, could have taken advantage of two different possible procedures under the CSRA, but did neither. [6]

Of course, *Towers, Filebark, Graham,* and *Mangano* either did not involve constitutional claims or, if they did, the Courts of Appeal actually did not prohibit those constitutional claims being brought outside of the CSRA. *See Towers*, 791 F.2d at 1247–48 (surmising, pre-*Elgin*, that "the Supreme Court appears to have imposed a kind of 'clear statement' requirement on Congress, requiring it to indicate explicitly its intent to displace judicially-created remedies for constitutional deprivations"); *Graham*, 358 F.3d at 932; *see also Veit v. Heckler*, 746 F.2d 508, 511 (9th Cir.1984). Nevertheless, even if Plaintiff is correct that *Elgin* is distinguishable on this basis, she still seemingly cannot avoid the Ninth Circuit's decision in *Saul*, which indicated that a constitutional claim in connection with a "prohibited personnel practice" would still have to be brought by way of the procedures available under the CSRA. *See Saul*, 928 F.2d at 838–40, 843; *see also id.* at 834 ("Congress did expect 'prohibited personnel practices' to cover supervisors' violations of employees' constitutional ... rights."). [7] Thus, whatever *Elgin*

---

6. Plaintiff concedes that she is a member of a union with a collective bargaining agreement. *See* Docket No. 39, at 24:27–25:2.

7. In 2007, the Ninth Circuit addressed the question of " 'whether the CSRA precludes colorable constitutional claims sounding in equity *where the plaintiff has no other remedy.*' " *Am. Fed'n of Gov't Employees Local 1 v. Stone*, 502 F.3d 1027, 1034 (9th Cir.2007) ("*Stone*") (emphasis added) (quoting *Stanley v. Gonzales*, 476 F.3d 653, 657 (9th Cir. 2007)). As *Saul* points out, not only could Plaintiff have pursued her claims with the OSC, but she alternatively could have initiated applicable grievance procedures pursuant to the collective bargaining agreement governing her. *See Saul*, 928 F.2d at 835.

might or might not say about Plaintiff s constitutional claims (or what other Circuit Courts would have to say on the matter, *see Colvin,* 777 F.3d 402, 405 (7th Cir. 2015)) ("[W]e are mindful of [the] suggestion [in the concurrence] that administrative law judges whose decisional independence is interfered with by their superiors might have a constitutional remedy."), *Saul* still requires that they be handled pursuant to the CSRA, not filed directly in district court. *See also Wilborn v. Napolitano,* No. 11–CV–2252–IEG (RBB), 2013 WL 1222061, *2–4, 2013 U.S. Dist. LEXIS 41999, *7–10 (S.D.Cal. Mar. 25, 2013), *aff'd,* 592 Fed.Appx. 571 (9th Cir.2015).

Finally, Plaintiff contends that *Elgin* is distinguishable because her case involves a charge of discrimination, and it is her position that the CSRA is not intended to force employees to proceed through two separate procedures—the EEO procedure and the CSRA/negotiated grievance procedure outlined in 5 U.S.C. § 7121(a)(1), (d). She asserts that she was not allowed, much less required, to split her discrimination and nondiscrimination claims relating to the same matter. *See Moreno v. McHugh,* No. ELH–10–2511, 2011 WL 2791240, *9 (D.Md. July 14, 2011); *Santos–Reyes v. Gonzales,* No. C 05–4550 VRW, 2007 WL 988182, *4 (N.D.Cal. Apr. 2, 2007). Because she raised her claims "under a statutory procedure"—the EEO procedure— that is all she believes she was required to do to bring *all* of her claims in district court.

But *Moreno* merely supports the proposition that a plaintiff may not bring the *same claim* both by way of the negotiated grievance procedure and by way of a statutory procedure, not that a plaintiff may not

bring her Title VII claims by way of an EEO procedure (as the CSRA specifically contemplates) while bringing other claims pursuant to the CSRA procedure. Moreover, as Defendants argue, Plaintiff has not demonstrated that she exhausted her *constitutional* claims by way of her Title VII EEO actions—that effort *appears* (*see infra,* regarding failure to supply the Court with the actual EEO charge) to have only concerned (and exhausted) her Title VII claims.

In sum, unless the Court concludes that this is an issue that may not be decided by way of Rules 12(b)(1) and/or 12(b)(6), it appears as though Plaintiff's two constitutional causes of action would be dismissed for lack of jurisdiction.

### C. Title VII Claims—Claims Three and Four

Plaintiff's claim of unlawful discrimination in violation of Title VII is founded upon allegations of discrimination on the basis of Plaintiff's national origin, race and religion. *See* AC ¶ 87. She asserts that the recusal recommendation/order has "undermined [her] essential judiciary function in making recusal/reassignment decisions on a case-by-case basis and exercising unimpaired judicial independence and [has] restricted her official duties." *Id.* ¶ 92; *see also id.* ¶¶ 4, 6, 55, 66. Further, it has caused her "to perform her duties as an Immigration Judge under the stigma of having had her impartiality impugned," "segregat[ing her] from her similarly situated colleagues both in job authority and in being subject to different case assignment and recusal standards." *Id.*

---

While *Stone* characterized *Saul* as distinguishable, its distinguishing factors are those that Plaintiff shares, *see Stone,* 502 F.3d at 1037 ("We conclude that *Saul* is distinguishable from this case because Saul could have availed himself of alternative mechanisms to pursue his constitutional claim."), making that decision, rather than *Stone,* of particular guidance here.

Plaintiffs claim of retaliation in violation of Title VII is founded on three alleged reactions to her having opposed any denial of leave to attend the Roundtable event and to her opposition to the recommendation and order that she recuse herself from cases involving Iranian nationals. *See id.* ¶ 95. First, she asserts that the recusal *order* itself was a retaliatory act connected to her protest of the recusal *recommendation. See id.* ¶ 96. Second, following that conduct—"within days" after her protests of the recusal recommendation and later protests of the recusal order—Plaintiff asserts that she was "subject to restriction in connection with outside speaking activities in her personal capacity." *Id.* ¶ 97. Specifically, she asserts that she suffered "restrictions on [her] use of title, with an appropriate disclaimer." *Id.* Finally, after filing her EEO complaint of discrimination, the Agency denied "her ability to be compensated for teaching courses relating to immigration law at UCLA," despite the fact that she "had been approved to receive compensation for teaching substantially the same law related course[ ] prior to filing her EEO complaint." *Id.* ¶ 98.

Key to Plaintiff's discrimination and retaliation claims is the timeline of conduct related to the recusal recommendation/order. The recusal recommendation/order came via a series of communications, according to Plaintiff. First, she received a July 5, 2012, recommendation from Rosenblum that she should recuse herself from all matters involving individuals from Iran. *See id.* ¶¶ 9, 32–33. Then that view was reiterated in an email from Rosenblum on August 28, 2012, in what Plaintiff characterizes as an "order," stating that Plaintiff "*should* disqualify [herself] from cases involving respondents from Iran to avoid any appearance problems." *Id.* ¶ 35. Rosenblum reiterated the recusal again on September 7, 2012, along with the assertion that the position "was not 'reviewable' by another entity." *Id.* ¶ 40. Finally, on September 10, 2012, ACIJ Fong "directed" Plaintiff to recuse herself. *See id.* ¶ 42. On October 10, 2012, Plaintiff contacted an EEO counselor. *See id.* ¶ 16(a).

1. *Exhaustion of Discrimination Claim*

■ Defendants first argue that Plaintiff's Title VII discrimination claim was not properly exhausted because Plaintiff did not contact an EEO counselor within 45 days of the July 5, 2012 initial communication/recommendation concerning recusal. *See* 29 C.F.R. § 1614.105(a)(1). Defendants do not contest the fact that Plaintiff contacted an EEO counselor on October 10, 2012, within 45 days of all dates germane here *other than* the July 5 date, but they take the position that "aside from her self-serving characterization of the July 5 email as a 'recommendation' and the August 28 email as an 'order,' plaintiff has not alleged any facts drawing a substantive distinction between the initial July 5 recommendation and the subsequent August 28 confirmation of that earlier recommendation." Docket No. 33, at 19:12–16. They point out that Plaintiff alleges that the escalation of the recommendation to an order was retaliatory, and discern from that theory that the earlier act—the July 5 recommendation—must have been discriminatory in Plaintiff's eyes. *See Westendorf v. W. Coast Contractors of Nev., Inc.,* 712 F.3d 417, 422 (9th Cir.2013) ("An employee engages in protected activity when she opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that law."); *Hashimoto v. Dalton,* 118 F.3d 671, 680 (9th Cir.1997); *EEOC v. Crown Zellerbach Corp.,* 720 F.2d 1008, 1013 (9th Cir.1983) ("The employee's statement cannot be 'opposed to an unlawful employment practice' unless it refers to *some* practice by the employer that is allegedly unlawful.").

The Court disagrees with Defendants. Plaintiff has alleged facts supporting the view that what initially was communicated

as a recommendation did not become an order until on or after August 28, 2012, within the 45–day time limit for contacting an EEO counselor. *See* AC ¶¶ 34–42. In other words, as alleged, an individual in Plaintiff's position—an Immigration Judge, in most circumstances completely in control of her own recusal decisions—would not necessarily have considered herself obligated, bound, or ordered to recuse herself until sometime on or after August 28, 2012. *See also id.* ¶¶ 39, 48,53.

■■ "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (*"Morgan"*). "A discrete act of discrimination is an act that in itself constitutes a separate actionable unlawful employment practice and that is temporally distinct." *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 127 S.Ct. 2162, 2175, 167 L.Ed.2d 982 (2007), *superseded by statute*, Pub.L. No. 111–2, 123 Stat. 5. "The existence of past acts and the employee's prior knowledge of their occurrence ... does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." *Morgan*, 536 U.S. at 113, 122 S.Ct. 2061; *see also Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 870 (9th Cir.2014) ("A claim under the [Rehabilitation] Act will not be untimely merely because similar, even identical, violations of the Act occurred outside the statutory period."); *Pouncil v. Tilton*, 704 F.3d 568, 578–79 (9th Cir.2012) (*"Morgan* instructs that a court must determine whether a claim is based on an independently wrongful, discrete act, and if it is, then the claim accrues, and the statute of

limitations begins to run, from the date of that discrete act, *even if there was a prior, related past act.*") (emphasis added).

Defendants assert in their Reply that every action Defendants took after the initial recusal recommendation was the *inevitable consequence* of that initial recommendation. *See Ervine*, 753 F.3d at 870 ("If the act is merely the 'delayed, but inevitable, consequence' of a prior discriminatory act, it will not cause a new statute of limitations to run.") (quoting *Pouncil*, 704 F.3d at 581); *Knox v. Davis*, 260 F.3d 1009, 1013–15 (9th Cir.2001). But they cite no case with facts analogous to those alleged here in support of their contention. The Court simply disagrees with Defendants, or at least does not believe it can reach that conclusion at this stage of the case. In addition, the mere fact that Plaintiff identified her reaction to the initial July 5, 2012, email, as conduct for which she was later retaliated against means little, because protected conduct includes opposition both to employment practices that violate Title VII and to those practices that an employee *"reasonably believes* violates that law." *Westendorf* 712 F.3d at 422 (emphasis added).

Defendants are also concerned that an employee could extend the deadline for contacting an EEO counselor simply by seeking clarification of a prior allegedly discriminatory action. However, where the initial action is tentative, or of uncertain force and effect, as Plaintiff has alleged to be the case here, *see, e.g.,* AC ¶¶ 33, 39, 48, 53, this Court believes that there is reason for an employee to seek "confirmation" or "clarification" and that the "hardening" of that initial act into a final order is indeed discrete for purposes of triggering timelines for administrative exhaustion.[8] The Court agrees with

---

8. Certainly, if the initial recommendation was just that, a "recommendation," and it was not final, it is hard to see how the August 28,

September 7 and September 10 communications could have been "inevitable consequences."

Plaintiff's concession that this does not mean that she is able to recover in connection with the July 5, 2012, email itself as a discriminatory act. *See Morgan,* 536 U.S. at 111–13, 122 S.Ct. 2061. But she is not cut off from recovering for the later allegedly discriminatory actions simply by virtue of her failure to timely act, administratively, in connection with the initial communication from Rosenblum.

The motion to dismiss on this basis would be denied. [9]

### 2. *Adverse Employment Action*

■ Defendants also argue that Plaintiff has not sufficiently pled that she suffered an adverse employment action as a result of the alleged discrimination. Citing *Davis v. Team Elec. Co.,* 520 F.3d 1080 (9th Cir.2008), for the proper construct of an "adverse employment action," Defendants argue that the recusal recommendation/order did not "materially affect[ ] the compensation, terms, conditions, or privileges ... of employment." *Id.* at 1089. They assert that Plaintiff's employment remains unchanged apart from her recusal of eight cases on her docket. Her overall caseload has not changed in any other fashion, they point out. As such, they

conclude that she suffered, at most, a minor readjustment of her job assignments. Additionally, they argue that purely subjective injuries, such as "dissatisfaction with a reassignment," "public humiliation or loss of reputation" are not adverse actions. *Forkkio v. Powell,* 306 F.3d 1127, 1130–31 (D.C.Cir.2002) ("Purely subjective injuries, such as dissatisfaction with a reassignment, or public humiliation or loss of reputation, are not adverse actions.") (omitting internal citations).

Plaintiff points out that the recusal order is not limited to the eight cases that were on her docket at the time, but continues in effect today. Moreover, while she may still be assigned the same *number* of cases as other IJs, she is still, in effect, subject to a separate case assignment and recusal *standard. See* AC ¶¶ 5, 45, 54. She perceives this as indefinitely impairing her judicial independence and authority, and as impugning her reputation for impartiality, stating that the action has "significantly impaired [her] judicial authority on an ongoing basis and continue[s] to improperly imply that she is less capable than her peers of performing her job with integrity." Docket No. 39, at 30:2–4.

Whether or not *Forkkio* accurately reflects the law of this Circuit [10]—as opposed

---

**9.** Even if the Court were inclined to agree with Defendants on this point, given *Williams v. Paramo,* 775 F.3d 1182, 1191 (9th Cir. 2015), and *Albino v. Baca,* 747 F.3d 1162, 1168 (9th Cir.2014) (*en banc*), *cert. denied sub nom., Scott v. Albino,* —— U.S. ——, 135 S.Ct. 403, 190 L.Ed.2d 307 (2014), it is somewhat doubtful that the Court could reach that conclusion outside of a summary judgment motion. In their Reply, Defendants assert that "plaintiff's failure to administratively exhaust her Title VII discrimination claim and one of her retaliation claims is apparent on the face of the Amended Complaint," Docket No. 46, at 2:26–27, but cites to no paragraphs from the AC. It is possible that the Court might agree with that contention in connection with Plaintiff's discrimination claim because the AC alleges the necessary dates for making a 45–day calculation. See AC ¶¶ 16(a), 33–42.

But to the extent Defendants are also referring to their exhaustion argument made in connection with Plaintiff's retaliation claim, *see infra,* the Court does not perceive anything on the face of the AC reflecting any exhaustion defect with respect to her teaching compensation-based retaliation allegation. While the AC admits that the teaching compensation ethics opinion post-dated Plaintiff's EEO charge, *see* AC ¶¶ 16(a), 73, 98, that is not the end of the necessary analysis with respect to exhaustion, for reasons discussed further *infra.*

**10.** *Forkkio* has never been cited in the Ninth Circuit. *Cf. Dahlia v. Rodriguez,* 735 F.3d 1060, 1079 (9th Cir.2013) (*en banc* ) (concluding, for purposes of retaliation claim, that "the general stigma resulting from placement on administrative leave appear[s] 'reasonably

to the D.C. Circuit—Plaintiff would at least appear to have alleged a sufficient adverse employment action by virtue of the fact that the blanket recusal order has impaired her judicial independence and authority, removing from her the ability and power to undertake recusal decisions on a case-by-case basis under the proper standard. Plaintiff correctly notes that the concept of an "adverse employment action" is to be defined or construed broadly. *See Fonseca v. Sysco Food Servs. of Ariz., Inc.,* 374 F.3d 840, 847 (9th Cir.2004); *see also* Chin, Cathcart, et al., *California Practice Guide: Employment Litigation* (*"Chin & Cathcart"*) (2014) §§ 7:393.10–393.20, at 7–84—7–85. At this procedural stage, the Court cannot say that Plaintiff's case for an adverse employment action falls outside of that breadth.

### 3. Discrimination Based Upon Religion

■ There is, however, one reason why Plaintiff's discrimination claim should be dismissed (though with leave to amend). Though it would not affect the entirety of her claim (and the Court could exercise its discretion to refrain from *partially* dismissing the claim), the Court agrees with Defendants that Plaintiff has not presented any factual allegations supporting the assertion that Plaintiff was discriminated against based upon her *religion. See Chin & Cathcart.* § 19:351, at 19:46—19–47. While acknowledging that she is required to plead facts in support of her religious discrimination theory, Plaintiff does not actually cite to any facts pled in the AC in this regard, simply offering the conclusion that "[t]he Complaint adequately alleges discrimination based on religion." *See* Docket No. 39, at 29–30 n.17. The Court disagrees with this unsupported assertion.

*See* AC ¶¶ 12, 20, 34, 56, 67, 87–88.[11] Therefore, if she wishes to proceed further on that aspect of her claim, Plaintiff would be ordered to amend.

### 4. Exhaustion of Teaching Compensation–Based Retaliation Allegation

Defendants assert that Plaintiffs teaching-based retaliation claim was not properly exhausted because it is not "like or reasonably related to" the allegations actually contained in her charge filed with the EEO. *See B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1100 (9th Cir.2002) ("Allegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge.") (omitting internal quotation marks) (quoting *Green v. Los Angeles Cnty. Superintendent of Schs.,* 883 F.2d 1472, 1475–76 (9th Cir.1989) and *Brown v. Puget Sound Elec. Apprenticeship & Training Trust,* 732 F.2d 726, 729 (9th Cir.1984)); *see also* 42 U.S.C. § 2000e–5(b). They argue that Plaintiff cannot allege that the ethics opinion regarding compensation for teaching was related to the facts that formed the basis of the discrimination in the charge or that it occurred within the timeframe of the events alleged in the charge. *See Vasquez v. Cnty. of Los Angeles,* 349 F.3d 634, 644 (9th Cir.2003) ("Subject matter jurisdiction extends to all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge."); *B.K.B.,* 276 F.3d at 1100 ("In determining whether a plaintiff has exhausted allegations that she did not specify

---

likely to deter employees from engaging in protected activity' ") (quoting *Coszalter v. City of Salem,* 320 F.3d 968, 976 (9th Cir.2003)).

**11.** Religion is identified as an alleged basis of discrimination so inconsistently in the AC, *see* AC ¶¶ 4, 9, 51, 60, 89, that the Court even questions whether Plaintiff really intends it as a basis for her claim in that regard.

in her administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.").

Plaintiff responds (and alleges, *see* AC ¶ 16(e)) that her teaching claim was "like or reasonably related to" the conduct outlined in her EEO charge, which she quotes in her Opposition, *see* Docket No. 39, at 31:20–27, because teaching is one of her "outside activities" and Defendants "restrict[ed] her ability to participate" in it by denying her ability to be paid for it. Plaintiff argues that the time between the recusal-related dispute·and the ethics opinion regarding her teaching activities is immaterial because the teaching opinion was issued while the EEO investigation was still pending. *See Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973) ("When an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC."); *see also id.* (reversing district court's decision granting motion to dismiss on exhaustion issue where the parties disputed whether later incidents were reasonably related to, or grew out of, earlier exhausted incidents, and "[i]t cannot be said as a matter of law that [the defendant's] interpretation of the facts is the only acceptable one").

If Plaintiff's quotation from her EEO charge is accurate, the Court would likely agree with her that her teaching-compensation claim is sufficiently "like or reasonably related to" the assertions in her charge. However, the problem the Court

has with reaching that conclusion on the present papers is that no party appears to have submitted an *actual copy* of her EEO charge for the record, and the language Plaintiff recites is not included in the AC. A final resolution of this issue must therefore await a sufficient provision of the EEO charge. In that respect, it would seem that Defendants must be the losing party on this issue at this point in time for the reasons addressed in Footnote 9, *supra*.

### 5. *Adverse Action*

██ A claim for retaliation under Title VII requires that Plaintiff engaged in protected activity, that she suffered a materially adverse action, and that there was a causal relationship between the two. *See Westendorf*, 712 F.3d at 422; *see also Chin & Cathcart* (2014) § 5:1486, at 5(II)–4. "The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

██ Defendants argue that the retaliation claims related to the escalation of the recommendation to an order and the refusal to allow Plaintiff to use her title when speaking at outside events fail because those actions do not amount to adverse actions. "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (internal quotation marks omitted); *see also id.* ("[Title VII's] antiretaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms ... by prohibiting employer ac-

tions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers.") (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). The standard for judging harm is an "objective" one. *See id.* The "escalation" caused Plaintiff no injury or harm, according to Defendants, because she was only forced to recuse herself from a tiny fraction of her docket, a minor readjustment of duties in their view. They also assert that Plaintiff has not alleged any facts to show that she was harmed by the restriction on her outside speaking engagements—which involved only preventing her from using her title—because she was still allowed to attend any events in her personal capacity.

While acknowledging that the two standards are distinct, Plaintiff argues that the same reasons supporting the conclusion that the recusal order amounted to an "adverse employment action" for purposes of her discrimination claim also support an "adverse action" conclusion (for purposes of the pleadings) with respect to that order in relation to her retaliation claim. In addition, she asserts that because judges routinely participate in outside activities concerning the law, the legal system, administration of justice and other matters of public concern, to deny Plaintiff the use of her title undercuts her ability to participate in these activities, and consequently may dissuade a reasonable worker from making or supporting a charge of discrimination. But Defendants note that Plaintiff's theory in her Opposition—that *denial of her use of her title* undercuts her ability to participate in outside activities—is a theory of harm not present in the AC.

For the same reason the Court concluded that the recusal order amounted to an "adverse employment action" within the context of Plaintiff's discrimination claim, it reaches the conclusion that it would constitute an "adverse action" for purposes of her retaliation claim. *See Chin & Cathcart*, § 7:393.20, at 7–85 (noting that "adverse" standard for retaliation claims is lower standard than "adverse employment action" standard for discrimination claims). This is an especially appropriate consideration considering Plaintiffs position as an Immigration Judge and the ordinary level of independence (in connection with recusal issues) that comes along with it. *See* AC ¶¶ 4, 55, 66, 92; *see also Chin & Cathcart*, § 5:1552, at 5(II)–16 ("Whether the employer's action is 'materially' adverse often depends on the circumstances of the case."). As to the speaking engagement aspect of the retaliation claim, while it believes that issue to be a closer call, the Court cannot conclude at this stage that Defendants are correct.[12]

6. *Causal–Link for Teaching Compensation–Based Retaliation Allegation*

■■■ Finally, as to the alleged retaliation regarding teaching compensation, Defendants assert that there is no causal link because the only fact supporting that assertion is that the ethics opinion regarding teaching came *after* she filed her EEO

---

**12.** The two *Amicus Curiae* briefs filed in connection with this case have little to say with respect to the issues Defendants actually raise in this motion. But they do weigh in on matters relevant to both the "adverse action" and "adverse employment action" issues. *See* Docket No. 43, at 11:25–12:12 (commenting that "faced with the risk of becoming the object of a blanket recusal order, it is unlikely that many immigration judges would choose to follow" the DOJ policy encouraging DOJ employees to participate in outside volunteer and professional activities); *id.* at 13:18–23 (concerning assertions regarding the public participant/opinion impact upon a judge subject to a blanket recusal order); Docket No. 44, at 8:24–10:7 (concerning adverse employment action based upon suggestion of Plaintiffs bias resulting from recusal order).

complaint of discrimination, and she has not shown that the temporal proximity alone was sufficient. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir.2002) ("[I]n some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity[, b]ut timing alone will not show causation in all cases; rather, in order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression. A nearly 18–month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation.") (omitting internal citations and quotation marks); *see also Westendorf*, 712 F.3d at 422 (noting that the causation requirement mandates that the protected conduct was a but-for cause, but not necessarily the only cause, of the allegedly retaliatory conduct). Defendants assert that, as a factual matter (not based on what is actually pled in the AC), the ethics opinion regarding teaching came nearly a year after Plaintiff protested her recusal. But the Court cannot consider that "factual matter" on a Rule 12(b)(6) motion and Defendants have not presented evidence (or complied with the Local Rules' procedural requirements) sufficient to convert this motion into one for summary judgment. Because Plaintiff has not admitted any timing-based defect on the face of the AC, it would be difficult for the Court to conclude that she has not sufficiently alleged causation for purposes of surviving the pleadings. *See Chin & Cathcart*, § 5:1544, at 5(110–15 ("The employee must show that the adverse action happened *after* or *simultaneously with* the protected activity.")).

Plaintiff asserts that there is no requisite temporal proximity for a retaliation claim, *see id.* and asserts that there were no other significant intervening events to explain Defendants' changed position regarding her ability to be compensated for her teaching activities, and that the decision was reached and implemented in connection with the next available teaching opportunity for Plaintiff following the recusal dispute. Plaintiff also points to her other allegations to support the view that the teaching-compensation decision was retaliatory—summarizing that Defendants were consistently engaged in placing new restrictions on her outside activities. *See also* Docket No. 39, at 13:26–14:15 (asserting that, in other respects, Agency policies affirmatively encourage Immigration Judges' professional, academic and civic activities outside of the workplace, and where policy does not require pre-approval for participation in such activities in an employee's personal capacity, approval cannot be summarily withdrawn or denied); *Chin & Cathcart.* § 5:1607, at 5(II)–24 (noting that inferences from circumstantial evidence may support causal link element, including "a pattern of conduct consistent with a retaliatory intent"); *id.* § 5:1623, at 5(II)–27.

While Defendants again make the point that Plaintiff relies, in her Opposition brief, on facts not pled in the AC—in connection with the assertion that there were no other significant intervening events to explain Defendants' change in position, and that she was denied compensation at the next available teaching opportunity—the Court believes that Plaintiff has pled enough to survive a pleadings-stage challenge to the causal-link element of her teaching compensation-based retaliation claim. [13]

---

**13.** *Villiarimo* was an appeal from a summary judgment decision. *See Villiarimo,* .281 F.3d

at 1061.

Defendants' challenges to Plaintiff's retaliation claim would be rejected at this stage.

### D. *Proper Defendants*

If the Court does not dismiss all of Plaintiffs claims, Defendants assert that all defendants except for Holder, in his official capacity, should be dismissed. *See* 42 U.S.C. § 2000e16(c) (stating that a personnel action-based civil action by an employee of an executive agency shall name "the head of the department, agency, or unit, as appropriate, [as] the defendant"); *Mahoney v. U.S. Postal Serv.*, 884 F.2d 1194, 1196 (9th Cir.1989) (indicating that only the Postmaster General is an appropriate defendant in civil suits against the United States Postal Service). Plaintiff does not appear to address this request in her Opposition, which the Court seemingly would interpret as a concession.

### E. *Leave to Amend*

As set forth above, the Court would dismiss Plaintiff's first and second claims, in addition to her third claim (though, as to that claim, only to the extent religion is advanced as the basis for discrimination). It would deny the motion, in full, with respect to Plaintiff's retaliation claim.

Plaintiff asks for an opportunity to amend if the Court grants any part of Defendants' motion. If the Court adopts the approach above with respect to the CSRA issue, there would not appear to be any basis to amend the first and second claims. Plaintiff would be allowed—if she so desires—to amend her Title VII discrimination claim in connection with her religious discrimination allegations. There is no need to amend her discrimination claim otherwise, nor her retaliation claim.