# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DENNIS T. MANGANO, Ph.D., M.D.,
      *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,
      *Defendant-Appellee.*

No. 05-17334

D.C. No.
CV-05-02836-PJH

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Submitted November 9, 2007*
San Francisco, California

Filed July 1, 2008

Before: Cynthia Holcomb Hall and Jay S. Bybee,
Circuit Judges, and Frank R. Zapata,** District Judge.

Opinion by Judge Bybee

---

*The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Frank R. Zapata, United States District Judge for the District of Arizona, sitting by designation.

## COUNSEL

Janine D. Bloch, Preston Gates & Ellis LLP, San Francisco, California, for the plaintiff-appellant.

Katherine B. Dowling, Assistant United States Attorney, Northern District of California, San Francisco, California, for the defendant-appellee.

## OPINION

BYBEE, Circuit Judge:

Dr. Dennis Mangano brought suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, for emotional distress and other injuries allegedly suffered in connection with his termination from the San Francisco Veterans Administration Medical Center. The district court found that his claims are preempted by the Civil Service Reform Act ("CSRA") and dismissed the suit. Dr. Mangano contends that the district court erred because he was hired under a provision that allows the Veterans' Administration ("VA") to employ part-time physicians "without regard to civil service or classification laws, rules, or regulations." 38 U.S.C. § 7405(a). He relies on *Orloff v. Cleland*, in which we held that the "civil service laws [do] not apply to part-time physicians employed by the VA." 708 F.2d 372, 376 (9th Cir. 1983). As we discuss in greater detail below, after *Orloff* was decided, Congress amended the CSRA to apply selectively to part-time physicians. 5 U.S.C. § 2105(f). We hold that Dr. Mangano's tort claims are subject to CSRA preemption and affirm the judgment.

I

The underlying tort claims in this case arose out of a variety of employment-related incidents while Dr. Mangano was working at the San Francisco Veterans Administration Medical Center.[1] He had been appointed in 1991 to a part-time position at the Medical Center pursuant to 38 U.S.C. § 7405(a)(1)(A). Dr. Mangano specialized in high-risk cardiac surgery and, prior to 1997, consistently received high ratings in his performance reviews.

---

[1]Because of the procedural posture of the case, we must accept as fact Dr. Mangano's allegations.

In 1997, as Dr. Mangano was preparing for surgery, he learned that his Service Chief, Dr. Cason, had removed a machine Dr. Mangano needed from the operating room and taken it to the animal lab. Dr. Mangano discovered that physicians had failed repeatedly to clean thoroughly the equipment used on animals before using it on VA patients, and he filed a formal complaint. Although an Administrative Board of Inquiry recommended that Dr. Cason be disciplined for "unethical" conduct, he was later promoted to Chair of the Operating Room Committee.

Dr. Mangano contends that in retaliation for raising his concerns, Dr. Cason began filing various minor formal complaints against him, including that he was late for work, used his telephone for personal calls, and switched on-call duties with other physicians. Dr. Mangano also alleges that Dr. Cason inappropriately criticized his handling of a patient and provided false testimony against him. In 2000, the Medical Center initiated Quality Assurance ("QA") and Administrative Board of Inquiry ("ABI") proceedings against Dr. Mangano arising from a minor incident in a case where Dr. Mangano was part of the surgical team. Dr. Mangano contends that he had not performed that procedure. Dr. Mangano claims that these incidents ultimately led to his termination and deprived him of the ability to practice medicine.

Dr. Mangano brought this action in district court in July 2005, seeking damages against the United States under the FTCA, for intentional infliction of emotional distress and intentional interference with the right to practice a lawful profession. The United States filed a motion to dismiss for lack of subject matter jurisdiction, arguing that Dr. Mangano's FTCA claims were preempted by the CSRA. The district court agreed and dismissed his claims. Dr. Mangano timely appealed.[2]

---

[2]We review the district court's dismissal for lack of subject matter jurisdiction *de novo*. *Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1128 (9th Cir. 2002).

Independent of his tort suit, Dr. Mangano filed an Individual Right of Action ("IRA") under the CSRA. *See* 5 U.S.C. § 1221. His IRA claim was pending before the Merit Systems Protection Board at the time the briefs in this case were filed.

II

Congress enacted the CSRA in 1978 to replace the old civil service system, an "outdated patchwork of statutes and rules built up over almost a century." *United States v. Fausto*, 484 U.S. 439, 444 (1988) (internal quotation marks and citation omitted). The heavily criticized pre-existing system involved "haphazard arrangements for administrative and judicial review of personnel action" depending on an employee's classification and the type of personnel decision. *Id.* By enacting the CSRA, Congress created "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445.

**[1]** The CSRA creates a "remedial scheme through which federal employees can challenge their supervisors' 'prohibited personnel practices.' " *Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1128 (9th Cir. 2002) (quoting 5 U.S.C. § 2302). If the challenged conduct "falls within the scope of the CSRA's 'prohibited personnel practices,' then the CSRA's administrative procedures are [the employee's] only remedy." *Id.* The CSRA's remedial scheme is both exclusive and preemptive because "permit[ting] FTCA claims to supplant the CSRA's remedial scheme" would defeat Congress' purpose of creating "a single system of procedures and remedies, subject to judicial review." *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991). Accordingly, where Congress has provided a process for processing prohibited personnel practices, other potential employee remedies are preempted. *See Fausto*, 484 U.S. at 455. In fact, a federal employee's personnel-related complaints are preempted "even if no remedy [is] available

. . . under the CSRA." *Collins v. Bender*, 195 F.3d 1076, 1079 (9th Cir. 1999); *see Bush v. Lucas*, 462 U.S. 367, 388 (1983); *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir. 1999).

A

Dr. Mangano contends that he is not subject to CSRA preemption because he was not employed as a full-time civil servant, but rather was hired as a part-time physician pursuant to 38 U.S.C. § 7405(a)(1)(A). That section provides that the Veterans Health Administration may employ part-time physicians "without regard to civil service or classification laws, rules, or regulations." *Id*. § 7405(a). Dr. Mangano argues that this statutory language specifically exempts his employment from all laws, rules, or regulations relating to civil servants.

In support of his argument, Dr. Mangano cites *Orloff v. Cleland*, where we concluded that the "plain language of the statute states that civil service laws shall not apply to part-time physicians employed by the VA." 708 F.2d 372, 376 (9th Cir. 1983). In *Orloff*, a part-time physician hired under the predecessor statute to 38 U.S.C. § 7405(a) sought the procedural protections of the Veterans' Preference Act to contest termination of his employment. *Id.* at 375-76. We held that the civil service laws did not apply to part-time physicians like Orloff. *Id.* at 376.

**[2]** Dr. Mangano's reliance upon *Orloff* is misplaced. Eleven years after the *Orloff* decision, Congress amended the CSRA to provide that "employees appointed under chapter 73 or 74 of title 38 shall be employees" for purposes of various sections under the CSRA, including § 2302, which governs prohibited personnel practices. 5 U.S.C. § 2105(f). We can give full effect to both 38 U.S.C. § 7405(a) and 5 U.S.C. § 2105(f). Section 7405(a) authorizes the Secretary of Veterans Affairs to hire part-time physicians "without regard to civil service or classification laws, rules or regulations;"

§ 2105(f) makes employees hired under the authority of 38 U.S.C. § 7405 subject to 5 U.S.C. § 2302. To the extent there is any tension at all between these provisions, § 2105 must govern, because "conflicting statutes should be interpreted so as to give effect to each but to allow a later enacted, more specific statute to amend an earlier, more general statute." *Acosta v. Gonzales*, 439 F.3d 550, 555 (9th Cir. 2006) (internal quotation marks omitted). There is no conflict. In effect, § 2105(f) is an exception to a carve-out. The two sections should be read together to say that the Secretary may hire certain part-time employees; such employees are hired without regard to the civil service classification law, rules or regulations, except that, such part-time employees will be treated as employees for various purposes, including § 2302. Congress could not have made it clearer that part-time VA employees must pursue claims of "prohibited personnel practices" through CSRA grievance procedures.

**[3]** Because 5 U.S.C. § 2302 applies to part-time employees, we hold that CSRA preemption applies to claims of "prohibited personnel practices" by employees hired pursuant to 38 U.S.C. § 7405(a). Congressional enactment of 5 U.S.C. § 2302(f) limited our holding in *Orloff* to situations in which Congress has not expressly extended civil service provisions to part-time employees. The CSRA remedial scheme—including preemption of other remedies—applies to Dr. Mangano despite the fact that he was hired as a part-time physician.

B

**[4]** The CSRA preempts Dr. Mangano's FTCA claims in this case if the conduct underlying his complaint can be challenged as "prohibited personnel practices" within the meaning of the CSRA. *See Saul v. United States*, 928 F.2d 829, 841 (9th Cir. 1991). The CSRA defines "prohibited personnel practices" as any "personnel action" taken by someone in authority that violates one of twelve enumerated practices. 5

U.S.C. § 2302(b). "Personnel action," in turn, is defined comprehensively to include any appointment, promotion, disciplinary or corrective action, detail, transfer, reassignment, reinstatement, restoration, reemployment, performance evaluation, pay or benefits decision, mandatory psychiatric examination, or any other significant change in duties, responsibilities, or working conditions. 5 U.S.C. § 2302(a)(2)(A)(i)-(xi).

The definition of "personnel action" is, necessarily, broad. *See Saul*, 928 F.2d at 834. There are limits to what qualifies as a "personnel action," but the instances are well outside anything that could reasonably be described as a "personnel action." *See Orsay*, 289 F.3d at 1129 (holding that aiming a loaded weapon does not fit any of the CSRA's definitions of personnel action)*; Brock v. United States*, 64 F.3d 1421, 1424-25 (9th Cir. 1995) (holding the CSRA does not preempt consideration of claims of rape and sexual assault).

**[5]** Dr. Mangano claims he suffered intentional infliction of emotional distress and intentional interference with the right to practice a lawful profession as the result of various actions allegedly taken in retaliation for his whistleblowing activities. His claim that he was unfairly terminated falls squarely within the definition of a personnel action as a "significant change in duties, responsibilities or working conditions" under the CSRA. 5 U.S.C. § 2302(a)(2)(A)(xi).

Dr. Mangano also alleges that government employees conspired to abuse the QA and ABI processes to prevent him from practicing his lawful profession, and that abuse of process is not a personnel action. We disagree. Such administrative proceedings, designed to test complaints about his performance at the Medical Center, are quintessential personnel actions. *Id.* § 2302(a)(2)(A)(iii),(xi).

Dr. Mangano contends that these personnel actions were taken "because he reported unsafe practices and procedures

involving the medical care of Veterans." Discipline for being a whistleblower is an enumerated "prohibited personnel practice." *Id.* § 2302(b)(8)(A) (prohibiting employers from taking an adverse personnel action based on retaliation for an employee's disclosure of "a violation of any law, rule, or regulation" or a "danger to public health and safety.")

**[6]** We hold that Dr. Mangano's FTCA claims involve personnel actions that can be challenged as prohibited personnel practices, and therefore the CSRA preempts those claims. His remedy, if any, lies within CSRA procedures.

## III

The judgment is affirmed.

**AFFIRMED.**