# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-30465

United States Court of Appeals
Fifth Circuit

**FILED**
August 20, 2018

Lyle W. Cayce
Clerk

DOCTOR THAYNE C. GRIENER,

Plaintiff – Appellant

v.

UNITED STATES OF AMERICA,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, JONES, and HAYNES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Dr. Thayne Griener—a physician who worked part-time at a hospital operated by the U.S. Department of Veterans Affairs ("VA")—brought this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, claiming that his discharge by a VA hospital and its employees intentionally inflicted emotional distress upon him and tortiously interfered with his business relationships. The district court, relying on *Mangano v. United States*, 529 F.3d 1243 (9th Cir. 2008), determined that it did not have subject-matter jurisdiction, because the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101 *et seq.*, preempted Dr. Griener's claims.

No. 17-30465

We hold that the CSRA preempts Dr. Griener's FTCA tort claims. Thus, we affirm the judgment of the district court, as modified to reflect that the dismissal is without prejudice.

I.

We turn to the facts. Dr. Griener is a board-certified otolaryngologist who began working at the Southeast Louisiana Veterans Health Care System in New Orleans in 2007. To do so, he curtailed his private medical practice. Dr. Griener worked 40 hours per week every other week and 30 hours per week on the alternate weeks. His schedule qualified him as a part-time employee under 38 U.S.C. § 7405(a)(1) and 38 U.S.C. § 7401(1), because he worked an average of 35 hours per week.

Dr. Griener worked at the VA for almost five years. He received a termination notice on July 9, 2012, which said that the VA was firing him for inappropriate behavior. According to Dr. Griener's complaint, the VA later changed its reason for terminating him, stating that he was no longer needed. Dr. Griener alleges that this statement was false: he was needed, as he was the only surgeon completing certain types of surgeries. He alleges that he was fired, instead, due to his whistleblowing about VA practices, which he believed violated the laws, rules, and regulations governing patient care. He alleges that the day before he was fired, he had contacted Congressman Charles Boustany about the VA's medical practices to request an investigation.

Dr. Griener originally filed an appeal of his termination with the Merit Systems Protection Board ("MSPB"), but it was denied. In an initial decision, an administrative judge determined that Dr. Griener did not qualify as an "employee" under 5 U.S.C. § 7511(a) and that he had not established that he had sought corrective action concerning his claim that the VA had removed him in reprisal for whistleblowing. His appeal to the MSPB, requesting it to reconsider the administrative judge's decision, was similarly denied.

No. 17-30465

He also filed an administrative FTCA claim with the VA, but that claim too was denied.  Dr. Griener did not, however, file a claim with the Office of Special Counsel ("OSC"), which "is authorized and required to investigate any allegation of prohibited personnel practices, and may request the MSPB to consider and order corrective action on the matter." *See Broadway v. Block*, 694 F.2d 979, 982 (5th Cir. 1982).

Afterward, Dr. Griener filed this FTCA tort lawsuit in federal court.  He pleaded intentional infliction of emotional distress, negligent infliction of emotional distress, tortious interference with business relationships, intentional damage to professional reputation, negligent injury to professional reputation, and "any and all other torts/actions in tort encompassed by his claim."  The government moved the district court to dismiss Dr. Griener's complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that the CSRA preempted Dr. Griener's FTCA claims.  The court granted that motion and dismissed the case, holding that Dr. Griener's FTCA claims were indeed preempted by the CSRA.

Dr. Griener moved for reconsideration, arguing that it was fundamentally unfair for his claim to be dismissed when the MSPB and the VA had similarly dismissed his FTCA claims based on his part-time employee status.  But the court denied the motion.

Dr. Griener timely appealed.

II.

We turn now to the central question in this case: whether the CSRA preempts FTCA claims that are based on employment decisions when the claims relate to the same facts under which a CSRA claim could be brought. We hold that the CSRA provides the exclusive remedy for these claims.

No. 17-30465

A.

The government moved for dismissal under Rule 12(b)(1), arguing that this court lacks statutory subject-matter jurisdiction to hear the case. *See In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) ("Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."). "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998)); *see also Tubesing v. United States*, 810 F.3d 330, 332 (5th Cir. 2016) (affirming a district court's dismissal for lack of subject-matter jurisdiction because a plaintiff's FTCA claims were precluded by the CSRA).

The standard of review for a district court's dismissal under Rule 12(b)(1) is de novo. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). "[W]e take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Id.* "The burden of proof for a Rule 12(b)(1) motion is on the party asserting jurisdiction." *Alfonso v. United States*, 752 F.3d 622, 625 (5th Cir. 2014) (quoting *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 189 (5th Cir. 2011)).

B.

Before proceeding to the parties' arguments, we provide the background of the civil-service system created by the CSRA. The Supreme Court has held that the CSRA forecloses other avenues of judicial review outside of its procedures. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012); *United States v. Fausto*, 484 U.S. 439, 443 (1988). This is so because the CSRA is an "elaborate . . . framework for evaluating adverse personnel actions against [federal employees]." *Fausto*, 484 U.S. at 443 (alteration in original) (quoting

4

No. 17-30465

*Lindahl v. OPM*, 470 U.S. 768, 774 (1985)). "It prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *Id.*

When examining whether the lack of a remedy within the CSRA precludes judicial review through some other statute, the Supreme Court has instructed us to examine "the purpose of the CSRA, the entirety of its text, and the structure of review that it establishes." *Id.* at 443–44; *see Elgin*, 567 U.S. at 11.

In terms of the CSRA's purpose, one of the primary reasons Congress passed the CSRA "was to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the 'outdated patchwork of statutes and rules built up over almost a century' that was the civil service system." *Fausto*, 484 U.S. at 444 (quoting S. Rep. No. 95-969 at 3 (1978), 1978 U.S.C.C.A.N. 2723, 2725). This purpose has led the Supreme Court to find that the CSRA is the exclusive avenue by which an employee can bring a claim for employment disputes addressed by the CSRA. *See Elgin*, 567 U.S. at 13 ("The purpose of the CSRA also supports our conclusion that the statutory review scheme is exclusive, even for employees who bring constitutional challenges to federal statutes."); *see also Grisham v. United States*, 103 F.3d 24, 26 (5th Cir. 1997) ("The government argues that because the CSRA, including the WPA, is a comprehensive remedial scheme, it precludes causes of action relating to the type of employment disputes covered by the statute. We agree with the government.").

Further, the text of the CSRA—which establishes an elaborate framework—demonstrates Congress's intent to entirely foreclose judicial review to employees to whom the CSRA denies statutory review. *Elgin*, 567 U.S. at 11. This framework is the only remedy for those employees to whom the CSRA grants some sort of administrative or judicial review. *Id.*; *Grisham*,

No. 17-30465

103 F.3d at 26. "Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Elgin*, 567 U.S. at 11–12.

With this comprehensive scheme as the backdrop, we turn to the parties' arguments.

C.

Dr. Griener argues—based upon "a close reading of the statutory web"—that he may bring this FTCA lawsuit because he does not have an individual right to appeal his termination to the MSPB under the CSRA. He is not entirely clear about how the CSRA's "statutory web" grants him the ability to bring his claims, but his basic argument seems to be that (1) 5 U.S.C. § 7511, which governs removal for adverse employment actions, does not allow part-time physicians to appeal their removals to the MSPB, *id.* § 7511(b)(10); (2) 5 U.S.C. § 7405(a), under which Dr. Griener was appointed, says that part-time physicians may be employed "without regard to civil service or classification law, rules, or regulations," *id.* § 7405(a); (3) based on § 7405(a)'s statement, Dr. Griener's position is excepted from the competitive and civil service; and (4) because his position is excepted from the competitive service, the civil-service mechanism for contesting adverse actions such as removal does not apply to Griener. But his argument ignores a different part of CSRA, 5 U.S.C. § 2105(f), which says that "employees appointed under Chapter 73 or 74 of title 38"—which includes Dr. Griener—"shall be employees" for the purposes of § 2302. Section 2302 governs adverse employment actions. Dr. Griener argues that this statute is an "anomaly."

We find Dr. Griener's statutory argument unconvincing. The CSRA says that part-time employees are considered "employees" for the purposes of adverse actions, and it establishes an avenue for Dr. Griener to challenge his

termination. Dr. Griener is correct that he does not have an individual right to petition the MSPB directly.[1] But, there is another CSRA remedy available to Dr. Griener: he can petition the OSC of the MSPB to investigate his allegations. The OSC "is authorized and required to investigate any allegation of prohibited personnel practices, and may request the MSPB to consider and order corrective action on the matter." *Broadway*, 694 F.2d at 982. After the OSC has investigated the matter, it must determine whether "reasonable grounds [exist] to believe that a prohibited personnel practice has occurred." 5 U.S.C. § 1214(b)(2)(B). If so, then the OSC may work with the agency involved to correct the prohibited personnel practice, *id.*, and if that agency fails, the OSC may "petition the [MSPB] for corrective action." *Id.* § 1214(b)(2)(C). After the MSPB enters a final order for a complaint brought by the OSC, "[j]udicial review of any final order or decision of the [MSPB] under this section may be obtained by any employee, former employee, or applicant for employment adversely affected by such order or decision." *Id.* § 1214(c)(1). It is undisputed that Dr. Griener has never petitioned the OSC.

It seems clear that the CSRA is the exclusive remedy available to Dr. Griener. Part-time employees are "employees" for claims of "prohibited personnel practice" by employees, 5 U.S.C. § 2105(f). Dr. Griener's claim that he was fired in retaliation for his opposition and vocal complaints about VA practices falls squarely within the CSRA's "prohibited personnel practices" provision. That provision says that supervising personnel cannot:

> **(8)** take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—

---

[1] The individual right to petition the MSPB is reserved only for employees in the "competitive service" and the "excepted service" who meet certain requirements regarding probationary periods and years of service. *See* 5 U.S.C. § 7511(a); *Elgin*, 567 U.S. at 5. Griener, as a part-time employee, cannot meet these requirements. *See* 5 U.S.C. § 7511(b)(10); 38 U.S.C. § 7401(a).

**(A)** any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—

   **(i)** any violation of any law, rule, or regulation, or
   **(ii)** gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

5 U.S.C. § 2302(b)(8). And a "personnel action" obviously includes firing an employee. *See id.* § 2302(a)(2)(A)(xii) (stating that a "personnel action" includes "any [] significant change in duties, responsibilities, or working conditions"); *see also Mangano,* 529 F.3d at 1247 ("[The plaintiff's] claim that he was unfairly terminated falls squarely within the definition of a personnel action as a significant change in duties, responsibilities or working conditions under the CSRA."). Although Dr. Griener argued in his brief that he did "not seek a judicial determination as to whether his termination was unlawful," he conceded at oral argument that each remedy he seeks is based on his improper firing. In short, as the *Mangano* court observed, "[W]here Congress has provided a process for processing prohibited personnel practices, other potential employee remedies are preempted." 529 F.3d at 1246 (citing *Fausto,* 484 U.S. at 455). Thus, the only remedy available to Dr. Griener is to petition the OSC of the MSPB, so the district court did not err in dismissing the case.[2]

---

[2] Dr. Griener further argues that because 5 U.S.C. § 2105(f) references 5 U.S.C. § 1222—which says, "Except as provided in section 1221(i), nothing in this chapter or chapter 23 shall be construed to limit any right or remedy available under a provision of statute which is outside of both this chapter and chapter 23"—his FTCA claims should be allowed under the statute because the FTCA is not in chapter 5 or chapter 23.

We decline to address this argument. Dr. Griener did not present this argument to the district court, and thus waived the argument because "[w]e will not reverse a district court ruling based on a claim not presented to that court." *E.g. Sims v. City of Madisonville,* 894 F.3d 632, 644 (5th Cir. 2018). And even assuming the argument were before us, in a similar case, we held that the CSRA precluded FTCA claims related to whistleblowing and that § 2105(f)'s reference to § 1222 did not change that conclusion. *Grisham,* 103 F.3d at 26–27.

No. 17-30465

III.

One final issue that we need to address is whether the district court erred in dismissing the case with prejudice instead of without prejudice. We find that it did, because "[a] dismissal for want of jurisdiction bars access to federal courts and is *res judicata* only of the lack of a federal court's power to act. It is otherwise without prejudice to the plaintiff's claims." *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 188 (5th Cir. 1986). A decision by a court without subject-matter jurisdiction is not conclusive of the merits of the claim asserted, meaning judgment should be entered without prejudice. *Id.*; *see also Campos v. United States*, 888 F.3d 724, 738 (5th Cir. 2018) ("We agree with our prior cases that have precluded district courts from dismissing plaintiffs' claims with prejudice when the basis for the dismissal is lack of subject-matter jurisdiction under Rule 12(b)(1)."). Because the district court lacked jurisdiction over Dr. Griener's claims, "it was without authority to dismiss the claims with prejudice because '[a] dismissal with prejudice is a final judgment on the merits' of a case." *Campos*, 888 F.3d at 738 (alteration in original) (quoting *Brooks v. Raymond Dugat Co. L C*, 336 F.3d 360, 362 (5th Cir. 2003)). Thus, we modify the judgment as to Dr. Griener's claims so that they are dismissed without prejudice. *See Warren v. Chesapeake Expl., L.L.C.*, 759 F.3d 413, 414 (5th Cir. 2014).

IV.

We bring this opinion to its end and now sum up. We hold that the CSRA preempts Dr. Griener's FTCA tort claims relating to his discharge for alleged whistleblowing. This means that he cannot bring his FTCA claims here for lack of jurisdiction. But we modify the judgment to reflect that his claims are dismissed without prejudice.

No. 17-30465

The district court's judgment is thus so MODIFIED and, in all other respects, the judgment of the district court is AFFIRMED.