# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2022

Lyle W. Cayce
Clerk

No. 22-40043

---

Feds for Medical Freedom; Local 918, American Federation of Government Employees; Highland Engineering, Incorporated; Raymond A. Beebe, Jr.; John Armbrust; et al.,

*Plaintiffs—Appellees*,

*versus*

Joseph R. Biden, Jr., in his official capacity as President of the United States; The United States of America; Pete Buttigieg, in his official capacity as Secretary of Transportation; Department of Transportation; Janet Yellen, in her official capacity as Secretary of Treasury; et al.,

*Defendants—Appellants*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:21-CV-356

---

No. 22-40043

Before Barksdale, Stewart, and Dennis, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

On September 9, 2021, President Biden issued Executive Order 14043, which mandates COVID-19 vaccination for all executive branch employees, subject to medical and religious exceptions. Several plaintiffs filed suit, alleging that the President exceeded his authority. The district court found that the plaintiffs were likely to succeed on the merits of their claim and that the equities favored them. It therefore preliminarily enjoined enforcement of the Order nationwide. The Government appealed.

For the following reasons, we VACATE the district court's preliminary injunction and REMAND to the district court with instructions to DISMISS for lack of jurisdiction.

## I. Facts & Procedural History

Executive Order 14043 provides that "[e]ach agency shall implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees, with exceptions only as required by law." Requiring Coronavirus Disease 2019 Vaccination for Federal Employees, 86 Fed. Reg. 50,989, 50,990 (Sept. 9, 2021). The Order directed the Safer Federal Workforce Task Force to publish guidance on implementing the vaccine mandate. *Id.* at 50,989. President Biden issued the Order "[b]y the authority vested in [him] as President by the Constitution and the laws of the United States of America, including" 5 U.S.C. §§ 3301, 3302, and 7301. *Id.*

On September 13, 2021, the Task Force published guidance directing agencies to apply their usual processes for evaluating religious and medical exceptions to the mandate. *See* Safer Federal Workforce Task Force, Vaccinations, https://go.usa.gov/xe5aC (last visited April 7, 2022). It also required non-exempt employees to be fully vaccinated by November 22,

No. 22-40043

2021, *id.*, but the Government later postponed that deadline to early 2022. Under the guidance, non-exempt employees who either refuse vaccination or fail to disclose whether they have received a vaccine face escalating disciplinary procedures that include counseling, suspension, and termination. *Id.* Employees are not subject to discipline while their exception requests are pending, and they have two weeks after an exception request's denial to receive their first (or only) dose of a COVID-19 vaccine. *Id.*

On December 21, 2021, a 6,000-member organization called "Feds for Medical Freedom," along with several other organizations and individual plaintiffs, challenged Executive Order 14043 in federal court. They moved for a nationwide preliminary injunction, alleging that the Order likely exceeds the President's authority. The district court agreed and granted preliminary injunctive relief on January 21, 2022. It recognized that "the federal-worker mandate had already been challenged in several courts across the country."[1] *Feds for Med. Freedom v. Biden ("Feds for Med. Freedom I")*, No. 3:21-CV-356,

---

[1] At least twelve district courts previously rejected challenges to Executive Order 14043 for various reasons. *See Brnovich v. Biden*, No. CV-21-1568, --- F. Supp. 3d ----, 2022 WL 252396 (D. Ariz. Jan. 27, 2022); *Oklahoma v. Biden*, No. CIV-21-1136, --- F. Supp. 3d ----, 2021 WL 6126230 (W.D. Okla. Dec. 28, 2021); *Brass v. Biden*, No. 21-cv-2778, 2021 WL 6498143 (D. Colo. Dec. 23, 2021) (report and recommendation), *adopted*, 2022 WL 136903 (D. Colo. Jan. 14, 2022); *AFGE Local 501 v. Biden*, No. 21-23828-CIV, --- F. Supp. 3d ----, 2021 WL 6551602 (S.D. Fla. Dec. 22, 2021); *Donovan v. Vance*, No. 21-CV-5148, --- F. Supp. 3d ----, 2021 WL 5979250 (E.D. Wash. Dec. 17, 2021); *McCray v. Biden*, No. 21-2882, 2021 WL 5823801 (D.D.C. Dec. 7, 2021); *Navy Seal 1 v. Biden*, No. 21-cv2429, --- F. Supp. 3d ----, 2021 WL 5448970 (M.D. Fla. Nov. 22, 2021); *Rydie v. Biden*, No. 21-2696, --- F. Supp. 3d ----, 2021 WL 5416545 (D. Md. Nov. 19, 2021); *Altschuld v. Raimondo*, No. 21-cv-2779, 2021 WL 6113563 (D.D.C. Nov. 8, 2021); *Church v. Biden*, No. 21-2815, --- F. Supp. 3d ----, 2021 WL 5179215 (D.D.C. Nov. 8, 2021); *Smith v. Biden*, No. 21-cv-19457, 2021 WL 5195688 (D.N.J. Nov. 8, 2021); *Foley v. Biden*, No. 21-cv-1098, 2021 WL 5750271, ECF No. 18 (N.D. Tex. Oct. 6, 2021); *see also Feds for Med. Freedom v. Biden ("Feds for Med. Freedom II")*, 25 F.4th 354, 355 (5th Cir. 2022) (Higginson, J., dissenting) ("[A] dozen district courts have rejected requests to enjoin this order.").

No. 22-40043

--- F. Supp. 3d ----, 2022 WL 188329, at *2 (S.D. Tex. Jan. 21, 2022). However, the district court attempted to distinguish those cases as having fallen victim to "procedural missteps by the plaintiffs or a failure to show imminent harm." *Id.*

The district court rejected the Government's argument that the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101 *et seq.*, deprived it of jurisdiction. *Id.* at *2–3. Specifically, it held that the CSRA did not apply because this case involves a "challenge [to] the mandate pre-enforcement," whereas the CSRA contemplates review after an employee suffers an adverse employment action. *Id.* The district court also held that some of the plaintiffs had ripe claims because those who were not seeking exemptions "face[d] an inevitable firing." *Id.* at *3. As to the merits, the district court broke with every other court to consider the issue and held that the plaintiffs were likely to show that neither the Constitution nor federal statute authorized Executive Order 14043. *Id.* at *4–6. It also found that the plaintiffs were likely to suffer irreparable harm absent an injunction and that the equities and public interest favored the plaintiffs. *Id.* at *4, *7. The district court therefore enjoined enforcement of Executive Order 14043 nationwide.

The Government appealed. Meanwhile, the Government moved the district court for a stay of its order, which the district court eventually denied. While that motion remained pending in the district court, the Government separately moved this court for a stay. A divided panel carried the Government's motion with the case and expedited this appeal. *Feds for Med. Freedom v. Biden ("Feds for Med. Freedom II")*, 25 F.4th 354, 355 (5th Cir. 2022).

## II. Standard of Review

"This court reviews the grant or denial of a preliminary injunction for abuse of discretion, with any underlying legal determinations reviewed

*de novo* and factual findings for clear error." *Topletz v. Skinner*, 7 F.4th 284, 293 (5th Cir. 2021).

## III. Discussion

The Government argues that the district court erroneously granted the plaintiffs preliminary relief from Executive Order 14043. "A preliminary injunction is an extraordinary remedy." *La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 608 F.3d 217, 219 (5th Cir. 2010). A court should issue one only if the movant establishes the following: "(1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest." *Id.*

### A. Jurisdiction

We first consider the Government's argument that the CSRA precluded the district court's subject matter jurisdiction. "When courts lack subject matter jurisdiction over a case, they lack the power to adjudicate the case." *Nat'l Football League Players Ass'n v. Nat'l Football League*, 874 F.3d 222, 225 (5th Cir. 2017). Accordingly, this court examines "jurisdiction whenever subject matter jurisdiction appears 'fairly in doubt.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009)).

#### i. Background on the CSRA

The CSRA established "the comprehensive and exclusive procedures for settling work-related controversies between federal civil-service employees and the federal government." *Rollins v. Marsh*, 937 F.2d 134, 139 (5th Cir. 1991). Before the CSRA, administrative and judicial review under the civil service system was "haphazard," resulting from the "outdated patchwork of statutes and rules built up over almost a century." *United States*

No. 22-40043

*v. Fausto*, 484 U.S. 439, 444 (1988) (quoting S. REP. NO. 95–969, at 3 (1978)). This pre-existing system drew "widespread" criticism, including that it produced inconsistent judicial decisions on similar matters due to the "concurrent jurisdiction, under various bases of jurisdiction, of district courts in all Circuits and the Court of Claims." *Id.* at 445. In response, Congress enacted the CSRA, which imposed "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.*

"Under the [CSRA], certain federal employees may obtain administrative and judicial review of specified adverse employment actions." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012). "Subchapter II of Chapter 75 governs review of major adverse actions taken against employees 'for such cause as will promote the efficiency of the service.'" *Id.* (quoting 5 U.S.C. §§ 7503(a), 7513(a)). These provisions apply to employees in the competitive service and to certain excepted service employees.[2] 5 U.S.C. § 7511(a)(1). They provide procedural protections when eligible employees face major adverse actions, which includes removals, suspensions for more than fourteen days, pay or grade reductions, and furloughs lasting thirty days or less. *Id.* § 7512.

---

[2] The CSRA provides three general categories of civil service employees: Senior Executive Service employees, competitive service employees, and excepted service employees. *Elgin*, 567 U.S. at 5 n.1. Senior Executive Service employees are high ranking employees who do not require Presidential appointment or Senate confirmation. *Id.* "Competitive service employees . . . are all other Executive Branch employees whose nomination by the President and confirmation by the Senate are not required and who are not specifically excepted from the competitive service by statute," along with certain other included employees. *Id.* (alteration omitted) (citing 5 U.S.C. § 2102(a)(1)). Employees "who are not in the Senior Executive Service or in the competitive service" are excepted service employees. *Id.* (citing 5 U.S.C. § 2103(a)).

The CSRA distinguishes between employees facing "proposed" adverse action and those who have already suffered adverse action. *See* 5 U.S.C. § 7513(b), (d). Employees facing "proposed" action are entitled to notice, an opportunity to respond, legal representation, and written reasons supporting the employing agency's decision. *Id.* § 7513(b). Once an employing agency finalizes an adverse action, however, the aggrieved employee may appeal to the Merit Systems Protection Board ("MSPB"). *Id.* § 7513(d). If the employee prevails on appeal, the MSPB can order the agency to comply with its decision and award "reinstatement, backpay, and attorney's fees." *Elgin*, 567 U.S. at 6 (citing 5 U.S.C. §§ 1204(a)(2), 7701(g)). "An employee who is dissatisfied with the MSPB's decision is entitled to judicial review in the United States Court of Appeals for the Federal Circuit" under § 7703. *Id.* at 6. The Federal Circuit's jurisdiction over such appeals is "exclusive." 28 U.S.C. § 1295(a)(9). If an employee appeals to the Federal Circuit, then that court must "review the record and hold unlawful and set aside any agency action, findings, or conclusions" that are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1)–(3).

This remedial scheme is "elaborate," establishing "in great detail the protections and remedies applicable to" adverse personnel actions against federal employees, "including the availability of administrative and judicial review." *Fausto*, 484 U.S. at 443. The Supreme Court has thus explained that, "[g]iven the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Elgin*, 567 U.S. at 11–12.

No. 22-40043

In *Elgin*, the Court considered an attempt by former federal employees to "carve out an exception to CSRA exclusivity for facial or as-applied constitutional challenges to federal statutes." *Id.* at 12. In rejecting that attempt, the Court emphasized that the CSRA's text and structure demonstrated that "[t]he availability of administrative and judicial review under the CSRA generally turns on the type of civil service employee and adverse employment action at issue," not whether a challenged action is constitutionally authorized. *Id.* at 12–13. The CSRA's purpose—to "creat[e] an integrated scheme of review"—further confirmed that "the statutory review scheme is exclusive." *Id.* at 13. Thus, the Court concluded that "the CSRA provides the exclusive avenue to judicial review when a qualifying employee challenges an adverse employment action by arguing that a federal statute is unconstitutional." *Id.* at 5. This court has also recognized that the CSRA precludes district court adjudication of federal statutory and constitutional claims.[3]

---

[3] *See, e.g.*, *Gremillion v. Chivatero*, 749 F.2d 276, 279 (5th Cir. 1985) (dismissing an IRS employee's *Bivens* suit because the employee had access to a comprehensive administrative remedial system established by the CSRA); *Palermo v. Rorex*, 806 F.2d 1266, 1270–71 (5th Cir. 1987) (holding that a federal employee cannot seek damages for an unconstitutional adverse personnel action, even though the administrative review system would not allow plaintiff complete recovery); *Rollins v. Marsh*, 937 F.2d 134, 139 (5th Cir. 1991) (holding that a federal employee's FTCA claims were precluded by the CSRA); *Morales v. Dep't of the Army*, 947 F.2d 766, 769 (5th Cir. 1991) (dismissing an employee's suit because all of the employee's claims were personnel decisions arising out of his relationship with the federal government and were therefore controlled by *Bush v. Lucas*, 462 U.S. 367 (1983), and *Rollins*, 937 F.3d at 139); *Grisham v. United States*, 103 F.3d 24, 26 (5th Cir. 1997) (holding that a federal employee's First Amendment and FTCA claims were precluded by the CSRA); *Tubesing v. United States*, 810 F.3d 330, 332 (5th Cir. 2016) (holding that a federal employee's FTCA claims were precluded by the CSRA); *Griener v. United States*, 900 F.3d 700, 702 (5th Cir. 2016) (holding that a part-time federal employee's FTCA claim was precluded by the CSRA).

No. 22-40043

### ii. Application of the CSRA

The Government contends that, under *Elgin*, the district court erroneously held that the CSRA does not apply until the plaintiffs suffer an adverse employment action. It urges that adopting the district court's logic would allow federal employees to circumvent the CSRA by filing suit before their employer disciplines or discharges them, thereby "gut[ting] the statutory scheme." This, it argues, would be inconsistent with Congress's intent to limit judicial review through the CSRA. *See id.* at 11. The Government acknowledges that the *Elgin* plaintiffs, unlike the current plaintiffs, had already suffered an adverse employment action—termination—when they filed suit. But it disputes that *Elgin* "turned on that distinction." Meanwhile, the plaintiffs, like the district court, attempt to distinguish *Elgin* and other cases applying the CSRA's jurisdictional provisions by arguing that those cases concerned challenges to individual adverse employment actions.

The CSRA's "text, structure, and purpose" support the Government's position. *See id.* at 10. Starting with the text and structure, the CSRA guarantees an MSPB appeal to only "[a]n employee against whom an action is taken." 5 U.S.C. § 7513(d). In contrast, "[a]n employee against whom an action is proposed is entitled to" the protections listed above. *Id.* § 7513(b). The Supreme Court recognized as much in *Elgin* when it observed that the CSRA offers an employee the right to a hearing before the MSPB "[i]f the agency takes final adverse action against the employee" and that the statute separately "sets out the procedures due an employee prior to final agency action." *Elgin*, 567 U.S. at 6, 11. Critically, in this case, any adverse action against the plaintiffs remains "proposed." They are thus entitled to "notice, representation by counsel, an opportunity to respond, and a written, reasoned decision from the agency" under § 7513(b), not administrative review under § 7513(d). *Id.* at 6. In other words, the plaintiffs

9

are "employees to whom the CSRA *denies* statutory review." *Id.* at 11 (emphasis in original). Congress intended "to entirely foreclose judicial review to" such employees. *Id.*; *Griener*, 900 F.3d at 703.

This construction is consonant with Congress's purpose in enacting the CSRA, which was to establish "an integrated scheme of review." *Elgin*, 567 U.S. at 14. As the facts of this case reveal, granting the plaintiffs extra-statutory review would "seriously undermine[]" that goal. *See id.* Allegedly, the plaintiffs who are not pursuing exception requests are "threatened with imminent discipline unless they give in and get vaccinated." The district court concluded that those plaintiffs had ripe claims because they "face an inevitable firing." *Feds for Med. Freedom I*, --- F. Supp. 3d at ----, 2022 WL 188329, at *3. It added that "[m]any of these plaintiffs already have received letters from their employer agencies suggesting that suspension or termination is imminent, have received letters of reprimand, or have faced other negative consequences." *Id.* Accordingly, these plaintiffs' terminations were "actual and imminent, not conjectural or hypothetical." *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). That finding, which the Government does not dispute, underscores that by filing this suit on the eve of receiving discipline, the plaintiffs seek to circumvent the CSRA's exclusive review scheme. Permitting them to do so would "reintroduce the very potential for inconsistent decisionmaking and duplicative judicial review that the CSRA was designed to avoid." *Elgin*, 567 U.S. at 14. We therefore decline their invitation.

Next, the plaintiffs contend that, even if Congress intended to limit judicial review through the CSRA, Congress did not intend to limit review of their claims. Specifically, they suggest that this court should "presume that Congress [did] not intend to limit jurisdiction" here because (1) "a finding of preclusion could foreclose all meaningful judicial review," (2) their suit is "wholly collateral to [the CSRA's] review provisions," and (3) their "claims

are outside the agency's expertise." *See Cochran v. U.S. Sec. & Exch. Comm'n*, 20 F.4th 194, 206 (5th Cir. 2021) (en banc) (quotation omitted). The district court agreed, holding that "[t]o deny the plaintiffs the ability to challenge the mandate pre-enforcement, in district court, is to deny them meaningful review." *Feds for Med. Freedom I*, --- F. Supp. 3d at ----, 2022 WL 188329, at *3. On appeal, the Government maintains that these arguments are meritless.

We agree with the Government. The plaintiffs assert that district court review is necessary because proceeding through the CSRA's remedial scheme could foreclose all meaningful review. But the CSRA "merely directs that judicial review . . . shall occur in the Federal Circuit," which is "fully capable of providing meaningful review." *Elgin*, 567 U.S. at 10. In *Elgin*, the Supreme Court held that "even if [the MSPB] was incapable of adjudicating a constitutional claim, meaningful judicial review was still available in the court of appeals." *Cochran*, 20 F.4th at 208. That was because the plaintiffs "sought substantive relief"—reinstatement, backpay, and attorney's fees—that "would have . . . fully redressed" the harm they suffered. *Id.* at 208–09. In contrast, where a plaintiff asserts a claim for "structural relief" from a remedial scheme, that scheme will be declared inadequate. *Id.* at 208 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010)). The plaintiffs here seek to avoid discipline for failing to comply with Executive Order 14043. That is a claim for substantive, not structural, relief. Indeed, the MSPB can order reinstatement and backpay to any nonexempt plaintiffs who are disciplined for refusing to receive a COVID-19 vaccine. *Elgin*, 567 U.S. at 6 (citing 5 U.S.C. §§ 1204(a)(2), 7701(g)). And "[r]emedies for discharge under the federal civil service laws are . . . an adequate remedy for individual wrongful discharge after the fact of discharge." *Garcia v. United States*, 680 F.2d 29, 31 (5th Cir. 1982).

No. 22-40043

The plaintiffs also argue that the CSRA will deny meaningful review to any of them who comply with Executive Order 14043 because they will never suffer an adverse employment action. However, the plaintiffs could have challenged an agency's proposed action against them before filing this suit and certainly before getting vaccinated. Specifically, they could have filed a complaint with the Office of Special Counsel ("OSC"), an independent agency, *see* 5 U.S.C. § 1211, asserting that Executive Order 14043 constitutes a "prohibited personnel practice" affecting a "significant change in duties, responsibilities, or working conditions."[4] *Id.* § 2302(a)(1), (a)(2)(A)(xii). The CSRA prohibits agencies from taking any "personnel action" that treats employees "without . . . proper regard for their privacy and constitutional rights." *Id.* §§ 2301(b)(2), 2302(b)(12). If OSC receives a complaint and determines that a "prohibited personnel practice has occurred," it is authorized to report that finding and to petition the MSPB for corrective action. *Id.* § 1214(b)(2)(B)–(C). An employee who is harmed by the MSPB's disposition of the petition can appeal to the Federal Circuit. *Id.* §§ 1214(c), 7703(b)–(c). There is no dispute that the plaintiffs have not attempted to avail themselves of this potential CSRA remedy, which could provide meaningful review.

---

[4] Although the CSRA does not define "working conditions," the district court concluded that the "term would not encompass a requirement that employees subject themselves to an unwanted vaccination." *Feds for Med. Freedom I*, --- F. Supp. 3d at ----, 2022 WL 188329, at *2 (citing *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 367 (D.D.C. 2020)). But, in construing Title VII of the CSRA, the Supreme Court has stated that the term "'working conditions' . . . naturally refers . . . to the 'circumstances' or 'state of affairs' attendant to one's performance of a job." *Fort Stewart Schs. v. Fed. Lab. Rels. Auth.*, 495 U.S. 641, 645 (1990). Executive Order 14043 qualifies as a significant change to the circumstances attending the job performance of federal employees. Indeed, the Order is explicit that whether an employee has received a COVID-19 vaccine affects "the efficiency of the civil service." 86 Fed. Reg. at 50,989.

We also reject the plaintiffs' argument that their claims are wholly collateral to the CSRA scheme. "[W]hether a claim is collateral to the relevant statutory-review scheme depends on whether that scheme is intended to provide the sort of relief sought by the plaintiff." *Cochran*, 20 F.4th at 207. The plaintiffs emphasize that they are not challenging any individual employment actions or prior discipline, which they say is "water under the bridge." Instead, the plaintiffs purportedly request only to have Executive Order 14043 declared void. But although the plaintiffs are not attempting to reverse any previous discipline, their challenge "ultimately [seeks] to avoid compliance with"—and discipline for violating—the Order. *Id.* at 207. Put differently, this case is "the vehicle by which they seek to" avoid imminent "adverse employment action," which "is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme." *Elgin*, 567 U.S. at 22. At bottom, the relief the plaintiffs seek is, in effect, to avoid discharge for refusing to comply with Executive Order 14043. This sort of employment-related relief is "precisely the kind[] of relief that the CSRA empowers the MSPB and the Federal Circuit to provide." *Id.*

Finally, the plaintiffs' claims do not exceed the MSPB's expertise. To show otherwise, the plaintiffs state only that their claims involve constitutional issues and "questions of administrative law, which the courts are at no disadvantage in answering." *See Cochran*, 20 F.4th at 207–08 (quoting *Free Enter. Fund*, 561 U.S. at 491). But the Supreme Court has recognized that "many threshold questions . . . may accompany a constitutional claim" and that "the MSPB can apply its expertise" to those questions. *Elgin*, 567 U.S. at 22. Further, there are often "preliminary questions unique to the employment context [that could] obviate the need to address the constitutional challenge." *Id.* at 22–23. For example, an employing agency may only take an adverse action against an employee "for

such cause as will promote the efficiency of the service." 5 U.S.C. §§ 7503(a), 7513(a). If the MSPB, reviewing an employee's appeal, determines that the employee suffered adverse action inconsistent with that requirement, it could order corrective action on that basis and avoid any other issues. Additionally, "an employee's appeal may involve other statutory or constitutional claims that the MSPB routinely considers," any of which "might fully dispose of the case" if the employee receives a favorable decision from the MSPB. *Elgin*, 567 U.S. at 23. The MSPB thus has expertise that it can "br[ing] to bear" on the plaintiffs' claims, and "we see no reason to conclude that Congress intended to exempt such claims from exclusive review before the MSPB and the Federal Circuit." *See id.*

\* \* \*

We conclude that the CSRA precluded the district court's jurisdiction. Accordingly, the plaintiffs' claim for preliminary injunctive relief fails because they have not shown a substantial likelihood of success on the merits. We do not reach the parties' arguments regarding the other requirements for a preliminary injunction.

## IV. Conclusion

For the foregoing reasons, we VACATE the district court's preliminary injunction and REMAND to the district court with instructions to DISMISS the case.

No. 22-40043

Rhesa Hawkins Barksdale, *Circuit Judge*, dissenting:

My esteemed colleagues hold:  The Civil Service Reform Act (CSRA), 5 U.S.C. § 1101 *et seq.*, precludes the district court's having subject-matter jurisdiction for this action challenging Executive Order 14043 (EO), which mandates COVID-19 vaccination for all federal civilian employees. I respectfully dissent.

I.

In September 2021, President Biden promulgated the EO, mandating vaccination for federal civilian employees. Pursuant to the EO, "[e]ach agency shall implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees, with exceptions only as required by law".  Exec. Order No. 14043, 86 Fed. Reg. 50,989 (9 Sept. 2021).  President Biden based issuance of the EO on "the authority vested in [him] as President by the Constitution and the laws of the United States of America, including sections 3301, 3302, and 7301 of title 5, United States Code".  *Id.*

Accordingly, the Safer Federal Workforce Task Force issued agencies guidance on evaluating religious and medical exceptions to the mandate. *Vaccinations*,          Safer          Federal          Workforce, https://www.saferfederalworkforce.gov/faq/vaccinations/ (last visited 6 April 2022).  Non-exempt employees were required to be vaccinated by 22 November 2021 (later postponed to 2022). *Id.*  Non-exempt employees who fail to get vaccinated or fully disclose vaccination status face disciplinary procedures, including counseling, suspension, and termination. *Id.*

On 21 December 2021, Feds for Medical Freedom, a 6,000-member organization, challenged the EO in federal court, claiming, *inter alia*, the EO is a violation of Article I of the Constitution.  After plaintiffs' requested nationwide preliminary injunction was granted on 21 January 2022, the

15

No. 22-40043

Government appealed and moved for a stay pending appeal. Our court ordered the motion carried with the case and expedited the appeal. *Feds for Med. Freedom v. Biden*, 25 F.4th 354, 355 (5th Cir. 2022). Oral argument was held on 8 March.

## II.

CSRA, enacted in 1978, "comprehensively overhauled the civil service system creating an elaborate new framework for evaluating adverse personnel actions against [federal employees]". *United States v. Fausto*, 484 U.S. 439, 443 (1988) (alteration in original) (citation omitted). Prior to CSRA's enactment, review of personnel actions was "haphazard", "lengthy", and "outdated" to the point that "managers [in the civil service] often avoid[ed] taking disciplinary action against employees even when it was clearly warranted". *Id.* at 444–45 (alteration in original) (citation omitted). Congress responded with CSRA, which created "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration". *Id.* at 445.

Title 5 of the United States Code governs Government Organization and Employees and contains CSRA. Part III, 5 U.S.C. § 2101 *et seq.*, governs Employees, and Subpart F of Part III, 5 U.S.C. § 7101 *et seq.*, covers Labor-Management and Employee Relations. As discussed in *Fausto*, three sections within CSRA govern "personnel actions": Chapter 43, 5 U.S.C. §4301 *et seq.*, "governs personnel actions based on unacceptable job performance"; Chapter 23, 5 U.S.C. § 2301 *et seq.*, "establishes the principles of the merit system of employment"; and Chapter 75, 5 U.S.C. § 7501 *et. seq.*, "governs adverse action taken against employees for the efficiency of the service". *Fausto*, 484 U.S. at 446–47 (citation omitted).

Chapter 75, in Subpart F, includes, *inter alia*, adverse actions: suspension for 14 days or less; removal; suspension for more than 14 days; reduction in grade or pay; and furlough for 30 days or less. 5 U.S.C. §§ 7501–43. Along that line, Subchapters 1, 2, and 5 include an "actions covered" section. 5 U.S.C. §§ 7502, 7512, 7542. Chapter 75 Subchapter 2, 5 U.S.C. §§ 7511–15, is pertinent to this case. It "governs . . . major adverse actions taken against employees". *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012). The covered adverse actions are: removal; suspension for more than 14 days; reduction in grade or pay; and furlough for 30 days or less. 5 U.S.C. § 7512.

The EO's *enactment*, however, does not constitute an adverse action subject to CSRA. The case at hand is instead a pre-enforcement challenge to a government-wide policy, imposed by the President, that would affect the 2.1 million federal civilian workers, including the 6,000 members of Feds for Medical Freedom. Relief plaintiffs seek does not fall within the purpose of CSRA. Enacting the EO and then requiring federal civilian employees who may later receive adverse action to seek relief now through CSRA would result in the very type of lengthy and haphazard results CSRA was enacted to prevent.

Seeking to rely upon *Elgin*—the primary opinion by which the majority attempts to find supporting authority—the majority holds at 9: CSRA's "text, structure, and purpose" support the Government's position. But, as noted by the majority at 9, plaintiffs in *Elgin* had already received adverse action (termination) when they filed suit. *Elgin*, 567 U.S. at 7. Further, plaintiffs in *Elgin* were terminated for violating the Military Selective Service Act, requiring certain male citizens to register for the Selective Service. *Id.* at 6–7. *Elgin*, therefore, pertains only to plaintiffs whose employment was terminated after they knowingly violated a statute, whereas here, plaintiffs have not received adverse action, but are instead

being told they could be, *inter alia*, terminated if they do not get vaccinated as required by the EO.

The majority at 9 also states: In *Elgin*, the Court recognized that employees "against whom an action is proposed" still fall under CSRA, focusing on the language that it, "sets out the procedures due an employee prior to final agency action". *Elgin*, 567 U.S. at 11 (citing 5 U.S.C. § 7513). But, the Court in *Elgin* also noted: "When an *employing agency* proposes a covered action against a covered employee, . . . CSRA gives the employee the right to notice, representation by counsel, an opportunity to respond, and a written reasoned decision from the agency". *Id.* at 6 (emphasis added) (citing 5 U.S.C. § 7513(b)).

Section 7513 does not apply to plaintiffs. First, it applies to federal employees facing proposed actions by "an employing agency". 5 U.S.C. § 7513. CSRA's language, which the majority references at 9, also refers to action taken by an "agency". *See id.* Here, there is no agency action. Rather, the President is attempting to impose a sweeping mandate against the federal civilian workforce. Again, no adverse action has been proposed or taken by an agency. In short, *Elgin* does not control the case at hand.

Section 7513 references individual employees; here, the President seeks to require an entire class of employees to be vaccinated or be subject to an adverse action. Simply put, CSRA does not cover pre-enforcement employment actions, especially concerning 2.1 million federal civilian employees. The district court, therefore, had subject-matter jurisdiction to hear plaintiffs' claims.

### III.

For the foregoing reasons, I respectfully dissent.